**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SIGNIFY NORTH AMERICA CORPORATION and SIGNIFY HOLDING B.V., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| AXIS LIGHTING INC., | ) ) |
| Defendant. | ) ) ) |

CIVIL ACTION NO. 1:19-cv-5516

**JURY TRIAL DEMANDED**

## AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Signify North America Corporation and Signify Holding B.V. (collectively, "Signify") for their amended complaint against Defendant Axis Lighting Inc. ("Defendant" or "Axis Lighting") allege as follows:

## NATURE OF THE ACTION

1.      This is an action for patent infringement under 35 U.S.C. § 271, et seq., by Signify against Defendant for infringement of U.S. Patent Nos. 7,014,336 ("the '336 patent"), 7,255,458 ("the '458 patent"), 7,256,554 ("the '554 patent"), 7,288,902 ("the '902 patent"), 7,352,138 ("the '138 patent"), 6,577,512 ("the '512 patent"), and 7,703,951 ("the '951 patent") (collectively, "the Patents-in-Suit").

## THE PARTIES

2.      Plaintiff Signify North America Corporation (formerly known as Philips Lighting North America Corporation) is a corporation organized and existing under the laws of Delaware with its principal place of business at 200 Franklin Square Drive, Somerset, New Jersey 08873. Signify North America Corporation is registered to do business in in the Commonwealth of

Massachusetts and has a place of business at 3 Burlington Woods Drive, Burlington, Massachusetts 01803.

3.      Plaintiff Signify Holding B.V. (formerly known as Philips Lighting Holding B.V.) is a corporation organized and existing under the laws of the Netherlands, with its registered office at High Tech Campus 48, 5656 AE Eindhoven, The Netherlands.

4.      On information and belief, Defendant Axis Lighting Inc. is a private corporation organized and existing under the laws of Canada, with a principal place of business at 2505 Senkus, Lasalle, H8N 2X8, QC, Canada.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

6.      This Court has personal jurisdiction over Defendant for at least the following reasons: on information and belief, (i) Defendant has committed acts of patent infringement in this District; (ii) Defendant regularly conducts business, solicits business, and/or derives substantial revenue from products provided within this District, including products that infringe Signify's patented technology; (iii) Defendant's website (www.axislighting.com) identifies a "Regional Vice President" for the "NY/NJ" region, including a phone number with a New York City area code (917); (iv) the "Representative Locator" on Defendant's website identifies International Lights, Inc. as a dealer of Defendant's lighting products, located at 36 West 20th Street, 4th Floor, New York, NY 10011, and includes contact and website information for International Lights, Inc.; (v) International Lights Inc.'s website (www.internationallights.com) identifies Defendant as a lighting manufacturer on its New York line card and in its search, provides a link to Defendant's website, and displays Defendant's lighting products, including products that infringe Signify's patented technology, in a pop-up line card; and websites have

identified Manhattan, NY lighting projects as having used Axis lighting products, such as the

53rd Street Library (www.archlighting.com) and Pearl River at Chelsea Market (architizer.com).

7.      Venue is proper in this District under 28 U.S.C. §§ 1391(b), (c) and/or 1400(b)

because, on information and belief, Defendant is subject to personal jurisdiction in this District,

Defendant is a foreign corporation for which venue is proper in any judicial district, and

Defendant has committed acts of patent infringement in this District.

## FACTUAL BACKGROUND

8.      Signify is a global market leader with recognized expertise in the development,

manufacture, and application of light-emitting diode ("LED") lighting solutions.

9.      To protect its intellectual property resulting from its significant investments,

Signify applied for and obtained numerous patents directed to various LED inventions and

technologies, including for example the Patents-in-Suit.

10.     On information and belief, Defendant's LED Lighting Devices include

Defendant's lighting devices with one or more LED light sources, including without limitation

(www.axislighting.com/CMS/LED.php):

- MikroLite 1.5 - Sculpt, Beam 2, Beam 2 Deep-Cell, Beam 4, Recessed Downlights
- MikroLite 1.0 - Stencil Pendant, Stencil Surface
- Adjustable Downlight - Beam 6
- Adjustable Accent - Sculpt, Pendant, Stencil Pendant D/I, Stencil Surface
- Fixed Downlight - Beam 4, Beam 6, Twin Beam 2,3,4
- Edge 2 Pendant - Pendant 45 Mounting, Pendant 90 Mounting, Surface Ceiling, Surface Corner, Wall Direct, Wall Indirect
- Stencil Direct/Indirect - D/I Louver, D/I Lens
- Shallow Plenum Systems - Click
- Special Application Systems - Graze Perfekt, Wall Wash Perfekt, Beam 3,4,6 and Sculpt Perimeter, Cove Perfekt
- Pendant Systems - Twin Beam 2 SurroundLite, Beam 2 Square, Beam 2,3,4,6 SurroundLite, Stencil, Sculpt
- Recessed Systems - Beam 3 SurroundLite, Beam 2,3,4,6, Sculpt, Click, Beam 3,4,6 Sculpt Perimeter

- Surface Systems - Beam 2 Square, Beam 2,3,4,6, Sculpt
- Wall Systems - Beam 2 Square, Twin Beam 2,3,4 SurroundLite, Beam 2,3,4,6, Sculpt
- Creative Systems - Sketch Pendant, Stencil
- Architectural Systems - Zen, Zen Square, 202, Arc, Cubic, LT, Slim, Slim 2x SL, Twig
- Linear Systems - Beam 2 Square, Beam 3 SurroundLite Recessed, Twin Beam 2 SurroundLite, Beam 4 SurroundLite Pendant
- Cove Systems - Perfekt Ceiling, Perfekt Wall
- Beam LED Perimeter - Beam 3, Beam 4, Beam 6
- Stencil - Linear, Open Forms, Closed Forms, Open Patterns, Closed Patterns
- Sculpt Accent Linear - Pendant, Recessed, Surface
- Sculpt Linear - Recessed, Recessed Vertical, Direct/Indirect Pendant, Pendant Direct, Surface
- Sculpt Accent Geometric - Pendant, Recessed, Surface
- Sculpt Geometric - L - 2', U - 2', Squares 2'X2', 4'X4', Rectangles 2'X4', 2'X6', 2'X8', 2'X10', 2'X12'
- Skye Line - SkyFall, SkyePool 2", SkyePool 0.5", SkyePool Flush, SkyeScape 2'X2', SkyeScape 4'X4', SkyeView 1'X4', SkyeView 2'X2'
- Downlight Inserts LED - 1 ¾" - BEAM 4 LED, 1 ¾" - BEAM 4, 3" - BEAM 6 LED, 3" - BEAM 6
- Linear LED Direct/Indirect - Beam 2 LED, Beam 3 LED, Beam 4 LED, Beam 6 LED
- Grid LED - Aura 2X2, Aura 2X4, Day 1X1, Day 1X2, Day 1X4, Day 2X2, Day 2X4, Dia 1X1, Dia 1X4, Dia 2X2, Dia 2X4, Plano 1X1, Plano 1X4, Plano 2X2, Plano 2X4, Tek 6, Tek 12, Wave 1X1, Wave 1X4, Wave 2X2, Wave 2X4
- Creative LED - Air LED, Prime W LED, Prime R LED, Mini Box LED, Sketch LED
- Wet Locations LED - Wet Beam 4x4, Wet Beam DI

## COUNT ONE

## INFRINGEMENT OF U.S. PATENT NO. 7,014,336

11.     Signify incorporates by reference paragraphs 1-10 as if fully set forth herein.

12.     On March 21, 2006, the United States Patent & Trademark Office ("Patent Office") duly and legally issued the '336 patent, titled "Systems and Methods for Generating and Modulating Illumination Conditions" to Alfred D. Ducharme et al. Plaintiff Signify North

America Corporation is the assignee and owner of all right, title, and interest in the '336 patent, a copy of which is attached as Exhibit A.

13.     On information and belief, Defendant has infringed and is infringing claims of the '336 patent, including at least claim 132, in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or importing LED Lighting Devices that include Axitune Dim-to-Warm ("D2W") or Tunable White ("TW") color mixing technology (e.g., designated by ordering code DW3020 for D2W color mixing and by TW2750 or TW2765 for TW color mixing), including without limitation: the Beam 2 Square Lens Pendant Direct, Beam 2 Square Louver Pendant Direct, Beam 2 Square SurroundLite Pendant Indirect, Beam 3 Recessed, Beam 4 Recessed, Cove Perfekt Ceiling, Cove Perfekt Wall, Graze Perfekt Perimeter, Sculpt Pendant, Sculpt Recessed, Sculpt Surface Direct, Sculpt Geometrix Recessed, Slim with VL Pendant, Twin Beam 2 Pendant, Twin Beam 2 Lens Pendant, Twin Beam 2 Louver Pendant, Twin Beam 2 SurroundLite Pendant Indirect, Twin Beam 3 Pendant, Twin Beam 3 SurroundLite Pendant, Twin Beam 4 Pendant, Twin Beam 4 SurroundLite Pendant, SkyeView Recessed 2X2, Aura Recessed, Dia Recessed, Day Recessed, Wave Recessed, Sculpt MikroLite 1.5 Pendant, Sculpt MikroLite 1.5 Recessed, Sculpt MikroLite 1.5 Surface, Beam 2 MikroLite 1.5 Pendant, and Beam 4 MikroLite 1.5 Pendant that include D2W or TW color mixing technology (collectively, "the Axitune D2W/TW Products"), in the United States. On information and belief, each of these products designated by DW3020 includes a dimmable LED driver and an Axis Dim-to-Warm dimming module, and each of these products designated by TW2750 or TW2765 includes an eldoLED DUALdrive LED driver from eldoLED B.V.

14.     Claim 132 of the '336 patent recites:

A lighting fixture for generating white-light, comprising:

a plurality of component illumination sources including at least two white LEDs configured to generate electromagnetic radiation of at least two different spectrums; and

a mounting holding said plurality, said mounting designed to allow said spectrums of said plurality to mix and form a resulting spectrum;

wherein the visible portion of said resulting spectrum has intensity greater than background noise at its lowest spectral valley.

15.   On information and belief, Defendant has directly infringed and is directly infringing claim 132 of the '336 patent by making, using, offering to sell, selling, and/or importing Axitune D2W/TW Products in the United States.

16.   On information and belief, each Axitune D2W/TW Product is a lighting fixture suitable for generating white light (e.g., a luminaire including at least two white LEDs).

17.   On information and belief, each Axitune D2W/TW Product includes a plurality of component illumination sources including at least two white LEDs configured to generate electromagnetic radiation of at least two different spectrums; for example, each Axitune D2W/TW Product includes at least two white LED light sources suitable for illuminating a space and configured to generate light in at least two different spectrums (e.g., warm white light and cool white light).

18.   On information and belief, each Axitune D2W/TW Product includes a mounting holding said plurality, said mounting designed to allow said spectrums of said plurality to mix and form a resulting spectrum; for example, each Axitune D2W/TW Product includes a mounting on which the at least two white LED light sources are arranged and which allows the spectrums of the at least two white LED light sources to mix and form a resulting spectrum.

19.     On information and belief, the visible portion of the resulting spectrum of each Axitune D2W/TW Product has intensity greater than background noise at its lowest spectral valley.

20.     The full extent of Defendant's infringement is not presently known to Signify. On information and belief, Defendant has made and sold, or will make and sell, products under different names or part numbers that infringe the '336 patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims in this Count without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identification based on additional information obtained through discovery or otherwise.

21.     Signify has suffered and continues to suffer damages as a result of Defendant's infringement of the '336 patent in an amount to be determined at trial.

22.     Defendant's infringement of the '336 patent is causing irreparable harm for which Signify has no adequate remedy at law unless Defendant is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '336 patent.

23.     On information and belief, Defendant was aware of and had notice of the '336 patent at least as early as October 30, 2018, and its infringement of the '336 patent has been and continues to be willful and deliberate. On October 30, 2018, Signify explained to Defendant that its Axitune D2W products and TW products infringe claim 132, among others, of the '336 patent. On June 10, 2019, Signify provided Defendant a draft complaint alleging infringement of at least claim 132 of the '336 patent and identifying representative products accused of infringement. Defendant has therefore acted, and continues to act, in an egregious and wanton

manner by continuing to infringe the '336 patent despite this knowledge of the patent, claims, and accused products.

## COUNT TWO

## INFRINGEMENT OF U.S. PATENT NO. 7,255,458

24.     Signify incorporates by reference paragraphs 1-23 as if fully set forth herein.

25.     On August 14, 2007, the Patent Office duly and legally issued the '458 patent, titled "System and Method for the Diffusion of Illumination Produced by Discrete Light Sources" to Ian Ashdown. Plaintiff Signify Holding B.V. is the assignee and owner of all right, title, and interest in the '458 patent, a copy of which is attached as Exhibit B.

### SurroundLite Asymmetrical Optic Products

26.     On information and belief, Defendant has infringed and is infringing claims of the '458 patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or importing LED Lighting Devices that include, for example, a SurroundLite Asymmetrical Optic (e.g., designated by ordering code "SLA"), including without limitation: the Twin Beam 2 SurroundLite Pendant, Twin Beam 2 SurroundLite Wall, Twin Beam 3 SurroundLite Pendant, Twin Beam 3 SurroundLite Wall, Twin Beam 4 SurroundLite Pendant, Twin Beam 4 SurroundLite Wall, Beam 2 Square Pendant, Beam 2 Square Wall, and Stencil Pendant that include a SurroundLite Asymmetrical Optic (collectively, "the SLA Optic Products"), in the United States. On information and belief, each of these products designated by "SLA" in the model number includes a SurroundLite Asymmetrical Optic.

27.     Claim 1 of the '458 patent recites:

An illumination system comprising:

a) a substrate having a plurality of light-emitting elements thereon, said light-emitting elements arranged in an array and said light-

emitting elements producing illumination having one or more wavelengths, said substrate having sides and a length;

b) at least one diffuser proximate to the light-emitting elements, said diffuser collecting the illumination produced by the light-emitting elements and redirecting the illumination in one or more predetermined directions, thereby blending the one or more wavelengths of the illumination and concentrating the illumination in the predetermined directions; and

c) a power system for energising the light-emitting elements and for controlling the illumination produced by the light-emitting elements.

28.     On information and belief, Defendant has directly infringed and is directly infringing claim 1 of the '458 patent by making, using, offering to sell, selling, and/or importing the SLA Optic Products in the United States.

29.     On information and belief, each SLA Optic Product is an illumination system; for example, each SLA Optic Product is suitable to illuminate a space.

30.     On information and belief, each SLA Optic Product includes a substrate having a plurality of light-emitting elements thereon, said light-emitting elements arranged in an array and said light-emitting elements producing illumination having one or more wavelengths, said substrate having sides and a length; for example, each SLA Optic Product includes at least one substrate having sides and a length and having a plurality of LED light sources thereon, and the plurality of LED light sources are arranged in an array (e.g., in a line) and generate light for illuminating a space and having one or more wavelengths.

31.     On information and belief, each SLA Optic Product includes at least one diffuser proximate to the light-emitting elements, said diffuser collecting the illumination produced by the light-emitting elements and redirecting the illumination in one or more predetermined directions, thereby blending the one or more wavelengths of the illumination and concentrating the illumination in the predetermined directions; for example, each SLA Optic Product includes a

specially designed diffuser (e.g., surroundlite asymmetric designated by "SLA") that collects the light generated from the plurality of LED light sources and redirects the emitted light in one or more predetermined directions, so as to both blend the one or more wavelengths and concentrate the light in the predetermined directions (e.g., the particular directions shown in the photometric curve provided in Defendant's specification sheet for each SLA Optic Product).

32.     On information and belief, each SLA Dimming Product includes a power system for energising the light-emitting elements and for controlling the illumination produced by the light-emitting elements; for example, each SLA Optic Product includes a driver (e.g., designated for example as "DP," "LT," "BI," or "O") for providing power to the LED light sources and controlling the illumination produced by the LED light sources.

**VL Optic Products**

33.     On information and belief, Defendant has infringed and is infringing claims of the '458 patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or importing LED Lighting Devices that include, for example, a VL Optic (e.g., designated by ordering code "VL" or "2xVL"), including without limitation: the Cubic, Slim, Slim 2x SL, Twig, SkyeView 1'X4', SkyeView 2'X2', Dia 1X1, Dia 1X4, Dia 2X2, Dia 2X4, Plano 1X1, Plano 1X4, Plano 2X2, Plano 2X4, Wave 1X1, Wave 1X4, Wave 2X2, and Wave 2X4 that include a VL Optic (collectively, "the VL Optic Products"), in the United States. On information and belief, each of these products designated by "VL" or "2xVL" in the model number includes a VL Optic.

34.     Claim 1 of the '458 patent recites:

An illumination system comprising:

a) a substrate having a plurality of light-emitting elements thereon, said light-emitting elements arranged in an array and said light-

emitting elements producing illumination having one or more wavelengths, said substrate having sides and a length;

b) at least one diffuser proximate to the light-emitting elements, said diffuser collecting the illumination produced by the light-emitting elements and redirecting the illumination in one or more predetermined directions, thereby blending the one or more wavelengths of the illumination and concentrating the illumination in the predetermined directions; and

c) a power system for energising the light-emitting elements and for controlling the illumination produced by the light-emitting elements.

35.     On information and belief, Defendant has directly infringed and is directly infringing claim 1 of the '458 patent by making, using, offering to sell, selling, and/or importing the VL Optic Products in the United States.

36.     On information and belief, each VL Optic Product is an illumination system; for example, each VL Optic Product is suitable to illuminate a space.

37.     On information and belief, each VL Optic Product includes a substrate having a plurality of light-emitting elements thereon, said light-emitting elements arranged in an array and said light-emitting elements producing illumination having one or more wavelengths, said substrate having sides and a length; for example, each VL Optic Product includes at least one substrate having sides and a length and having a plurality of LED light sources thereon, and the plurality of LED light sources are arranged in an array (e.g., in a line) and generate light for illuminating a space and having one or more wavelengths.

38.     On information and belief, each VL Optic Product includes at least one diffuser proximate to the light-emitting elements, said diffuser collecting the illumination produced by the light-emitting elements and redirecting the illumination in one or more predetermined directions, thereby blending the one or more wavelengths of the illumination and concentrating the illumination in the predetermined directions; for example, each VL Optic Product includes a

specially designed diffuser (e.g., VL optic designated by "VL" or 2xVL optic designated by "2xVL") that collects the light generated from the plurality of LED light sources and redirects the emitted light in one or more predetermined directions, so as to both blend the one or more wavelengths and concentrate the light in the predetermined directions (e.g., the particular directions shown in the photometric curve provided in Defendant's specification sheet for each VL Optic Product).

39.     On information and belief, each VL Dimming Product includes a power system for energising the light-emitting elements and for controlling the illumination produced by the light-emitting elements; for example, each VL Optic Product includes a driver (e.g., designated for example by "DP," "LT," "BI," or "O") for providing power to the LED light sources and controlling the illumination produced by the LED light sources.

40.     The full extent of Defendant's infringement is not presently known to Signify. On information and belief, Defendant has made and sold, or will make and sell, products under different names or part numbers that infringe the '458 patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims in this Count without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identification based on additional information obtained through discovery or otherwise.

41.     Signify has suffered and continues to suffer damages as a result of Defendant's infringement of the '458 patent in an amount to be determined at trial.

42.     Defendant's infringement of the '458 patent is causing irreparable harm for which Signify has no adequate remedy at law unless Defendant is enjoined by this Court. Under 35

U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '458 patent.

43.     On information and belief, Defendant was aware of and had notice of the '458 patent at least as early as May 16, 2012, and its infringement has been and continues to be willful and deliberate. On May 16, 2012, Signify explained to Defendant that the '458 patent may be relevant to Defendant's LED-based luminaire products. On May 16, 2012, Defendant acknowledged receipt of this notice and requested a copy of the patent for evaluation. On April 4, 2019, Signify explained to Defendant that its Twin Beam 2 luminaire (e.g., the "TB2DILED" product), and light systems incorporating similar optical arrangements (such as the "VL optics" system or SurroundLite system), infringe at least claim 1 of the '458 patent. On June 10, 2019, Signify provided Defendant a draft complaint alleging infringement of at least claim 1 of the '458 patent and identifying representative products accused of infringement. Defendant has therefore acted, and continues to act, in an egregious and wanton manner by continuing to infringe the '458 patent despite this knowledge of the patent, claims, and accused products.

## COUNT THREE

## INFRINGEMENT OF U.S. PATENT NO. 7,256,554

44.     Signify incorporates by reference paragraphs 1-43 as if fully set forth herein.

45.     On August 14, 2007, the Patent Office duly and legally issued the '554 patent, titled "LED Power Control Methods and Apparatus" to Ihor A. Lys. Plaintiff Signify North America Corporation is the assignee and owner of all right, title, and interest in the '554 patent, a copy of which is attached as Exhibit C.

46.     On information and belief, Defendant has infringed and is infringing claims of the '554 patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or importing LED Lighting Devices that incorporate, for example, a

Lutron Hi-lume 1% EcoSystem LDE1 LED driver (e.g., designated by "LT" in the model number and "LDE1" for the driver deselection) or another driver containing substantially similar circuitry, including without limitation the products identified in paragraph 10 that include a Lutron Hi-lume 1% EcoSystem LDE1 LED driver or a driver containing substantially similar circuitry (collectively, "the LDE1 Dimming Products"), in the United States. On information and belief, each of these products designated by "LT" in the model number and with the "LDE1" driver selection includes at least one Hi-lume 1% EcoSystem LDE1 LED driver module from Lutron Electronics Company, such as the LDE11U1UMN-MABLK and/or LDE12U1UMN-NABLK, which is suitable for operation with a Lutron EcoSystem dimming control. Two LDE1 LED drivers— the LDE11U1UMN-MABLK and LDE12U1UMN-NABLK—from an Axis Lighting Twin Beam 2 SurroundLite Pendant Direct/Indirect, model number TB2DILLED-750-750-90-27-SLA-SO-2-W-120-LT-1, were reversed engineered, and the resulting schematics are attached as Exhibits F and G, respectively.

47.    Claim 1 of the '554 patent recites:

An apparatus, comprising:

at least one first LED configured to generate first radiation having a first spectrum; and

a first feed-forward driver coupled to the at least one first LED and configured to controllably vary a first intensity of the first radiation without monitoring or regulating a first voltage or a first current provided to the at least one first LED and without optically monitoring the first radiation, wherein the first feed-forward driver comprises:

at least one energy transfer element to store input energy derived from a power source and to provide output energy to the at least one first LED; and

at least one switch coupled to the at least one energy transfer element to control at least the input energy stored to the at least one energy transfer element.

- 14 -

48.     On information and belief, Defendant has directly infringed and is directly infringing claim 1 of the '554 patent by making, using, offering to sell, selling, and/or importing the LDE1 Dimming Products.

49.     On information and belief, each LDE1 Dimming Product is an apparatus (e.g., an LED luminaire).

50.     On information and belief, each LDE1 Dimming Product includes at least one first LED configured to generate first radiation having a first spectrum; for example, each LDE1 Dimming Product includes at least one LED light source configured to generate light characterized by radiation in the visible spectrum, as indicated by a color temperature value (e.g., 2700K).

51.     On information and belief, each LDE1 Dimming Product includes a first feed-forward driver coupled to the at least one first LED; for example, each LDE1 Dimming Product includes a feed-forward driver (e.g., a two-stage power converter) that includes, for example a boost/PFC stage (e.g., including for example the right-side inductor in transformer T1, diode D40, and transistor Q40) and a half-bridge resonant conversion stage (e.g., including for example the primary-side inductor in transformer T1, diodes D3, D5, D7, and D7, and transistors Q6 and Q7) coupled to the at least one LED light source (e.g., through the LED power output terminal block).

52.     On information and belief the first feed-forward driver in each LDE1 Dimming Product is configured to controllably vary a first intensity of the first radiation without monitoring or regulating a first voltage or a first current provided to the at least one first LED and without optically monitoring the first radiation; for example, the feed-forward driver in each LDE1 Dimming Product is configured to variably control the intensity of the light of the at least

one LED light source based on a varying phase-cut AC signal from a phase-cut AC dimmer, without monitoring or regulating the voltage or current provided to the at least one LED light source and without optically monitoring the light generated by the LED light source—the feed-forward driver in each LDE1 Dimming Product monitors only signals on the "primary" side of the circuit and is not configured to receive any feedback from the output to the LED light source on the "secondary" side of the circuit.

53.   On information and belief, the first feed-forward driver in each LDE1 Dimming Product includes at least one energy transfer element to store input energy derived from a power source and to provide output energy to the at least one first LED; for example, the feed-forward driver in each LDE1 Dimming Product includes transformer T2 to store input energy from a power source (e.g., input power from a phase-cut AC dimmer) and to provide output energy to the at least one LED light source (e.g., through the LED power output terminal block).

54.   On information and belief, the first feed-forward driver in each LDE1 Dimming Product includes at least one switch coupled to the at least one energy transfer element to control at least the input energy stored to the at least one energy transfer element; for example, the feed-forward driver in each LDE1 Dimming Product includes switching transistors Q6 and Q7 coupled to transformer T2 to control the input energy stored to transformer T2 (e.g., by controlling the current flowing through the primary-side inductor of transformer T2).

55.   The full extent of Defendant's infringement is not presently known to Signify. On information and belief, Defendant has made and sold, or will make and sell, products under different names or part numbers that infringe the '554 patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims in this Count without the benefit of discovery or claim construction in this action, and expressly reserves the right to

augment, supplement, and revise its identification based on additional information obtained through discovery or otherwise.

56.     Signify has suffered and continues to suffer damages as a result of Defendant's infringement of the '554 patent in an amount to be determined at trial.

57.     Defendant's infringement of the '554 patent is causing irreparable harm for which Signify has no adequate remedy at law unless Defendant is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '554 patent.

58.     On information and belief, Defendant was aware of and had notice of the '554 patent at least as early as February 5, 2018, and its infringement of the '554 patent has been and continues to be willful and deliberate. On February 5, 2018, Signify explained to Defendant that its LED products including a Lutron LDE1 driver, or similar circuitry, infringe at least claim 1 of the '554 patent. On June 10, 2019, Signify provided Defendant a draft complaint alleging infringement of at least claim 1 of the '554 patent and identifying representative products accused of infringement. Defendant has therefore acted, and continues to act, in an egregious and wanton manner by continuing to infringe the '554 patent despite this knowledge of the patent, claims, and accused products.

## COUNT FOUR

## INFRINGEMENT OF U.S. PATENT NO. 7,288,902

59.     Signify incorporates by reference paragraphs 1-58 as if fully set forth herein.

60.     On October 30, 2007, the Patent Office duly and legally issued the '902 patent, titled "Color Variations in a Dimmable Lighting Device with Stable Color Temperature Light Sources" to John L. Melanson. Plaintiff Signify Holding B.V. is the assignee and owner of all right, title, and interest in the '902 patent, a copy of which is attached as Exhibit D.

- 17 -

61.     On information and belief, Defendant has infringed and is infringing claims of the '902 patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or importing LED Lighting Devices that include Axitune Dim-to-Warm ("D2W") color mixing technology (e.g., designated by ordering code DW3020) and a phase-dimmable driver, such as a Lutron Hi-lume A-series 2Wires Forward Phase (1%) LED driver (e.g., designated by "LT" in the model number and "LTE" for the driver deselection), including without limitation: the Beam 2 Square Lens Pendant Direct, Beam 2 Square Louver Pendant Direct, Beam 2 Square SurroundLite Pendant Indirect, Beam 3 Recessed, Beam 4 Recessed, Cove Perfekt Ceiling, Cove Perfekt Wall, Graze Perfekt Perimeter, Sculpt Pendant, Sculpt Recessed, Sculpt Surface Direct, Sculpt Geometrix Recessed, Slim with VL Pendant, Twin Beam 2 Pendant, Twin Beam 2 Lens Pendant, Twin Beam 2 Louver Pendant, Twin Beam 2 SurroundLite Pendant Indirect, Twin Beam 3 Pendant, Twin Beam 3 SurroundLite Pendant, Twin Beam 4 Pendant, Twin Beam 4 SurroundLite Pendant, SkyeView Recessed 2X2, Aura Recessed, Dia Recessed, Day Recessed, Wave Recessed, Sculpt MikroLite 1.5 Pendant, Sculpt MikroLite 1.5 Recessed, Sculpt MikroLite 1.5 Surface, Beam 2 MikroLite 1.5 Pendant, and Beam 4 MikroLite 1.5 Pendant that include D2W color mixing technology and a phase-dimmable driver (collectively, "the D2W LTE Products"), in the United States. On information and belief, each of these products designated by DW3020 includes an Axis Dim-to-Warm dimming module, and each of these products designated by LT in the model number and LTE for the driver selection includes a Lutron Hi-lume A-series 2Wires Forward Phase (1%) LED driver from Lutron Electronics Company.

62.     Claim 1 of the '902 patent recites:

A lighting device comprising:

two input terminals to receive a dimmer signal from a dimmer and alternating current (AC) power, wherein the dimmer signal indicates a dimming level;

a first light source having a stable first color temperature;

a second light source having a stable second color temperature;

a light source driver, coupled to the first light source and the second light source and to the input terminals to supply a first drive current to the first light source and a second drive current to the second light source; and

a light source driver controller, coupled to the light source driver, to cause the light source driver to vary the first and second drive currents in response to changes in the dimming level indicated by the dimmer signal, wherein varying the first and second drive currents varies a color temperature of the lighting device.

63.     On information and belief, Defendant has directly infringed and is directly infringing claim 1 of the '902 patent by making, using, offering to sell, selling, and/or importing Axitune D2W LTE Products in the United States.

64.     On information and belief, each Axitune D2W LTE Product is a lighting device; for example, each Axitune D2W LTE Product is a luminaire suitable to illuminate a space.

65.     On information and belief, each Axitune D2W LTE Product includes two input terminals to receive a dimmer signal from a dimmer and alternating current (AC) power, wherein the dimmer signal indicates a dimming level; for example, each Axitune D2W LTE Product includes two input terminals to receive a phase-cut AC dimmer signal that indicates a dimming level and AC power (e.g., a varying 120-volt AC phase-cut input).

66.     On information and belief, each Axitune D2W LTE Product includes a first light source having a stable first color temperature, and a second light source having a stable second color temperature; for example, each Axitune D2W LTE Product includes a first LED light

source maintaining a warmer color temperature and a second LED light source maintaining a cooler color temperature.

67.     On information and belief, each Axitune D2W LTE Product includes a light source driver, coupled to the first light source and the second light source and to the input terminals to supply a first drive current to the first light source and a second drive current to the second light source; for example, each Axitune D2W LTE Product includes a phase-dimmable driver, such as a Lutron Hi-lume A-series 2Wires Forward Phase (1%) LED driver, and Axis Dim-to-Warm module coupled to the first and second light sources and to the input terminals to supply first and second drive currents to the first and second light sources, respectively.

68.     On information and belief, each Axitune D2W LTE Product includes a light source driver controller, coupled to the light source driver, to cause the light source driver to vary the first and second drive currents in response to changes in the dimming level indicated by the dimmer signal, wherein varying the first and second drive currents varies a color temperature of the lighting device; for example, the dimmable driver in each Axitune D2W LTE Product includes a light source driver controller (e.g., including at least the Axis Dim-to-Warm module) to cause the driver to vary the first and second drive currents in response to changes in the dimming level indicated by the dimmer signal input, which results in varying a color temperature of light generated by the Axitune D2W LTE Product (e.g., transitioning the color temperature of the light from 3000K to 2000K while simultaneously dimming the light along a linear curve).

69.     On information and belief, Defendant has infringed and is infringing claims of the '902 patent, including at least claim 10, in violation of 35 U.S.C. § 271(a) and/or § 271(b) by making, using, offering to sell, selling, and importing, and/or inducing others to infringe by using, LED Lighting Devices that include Axitune Dim-to-Warm ("D2W") color mixing

technology (e.g., designated by ordering code DW3020) and a dimmable driver, such as a Lutron

Hi-lume A-series 2Wires Forward Phase (1%) LED driver (e.g., designated by "LT" in the

model number and "LTE" for the driver deselection) or a Lutron Hi-lume 1% EcoSystem LDE1

LED driver (e.g., designated by "LT" in the model number and "LDE1" for the driver

deselection), including without limitation: the Beam 2 Square Lens Pendant Direct, Beam 2

Square Louver Pendant Direct, Beam 2 Square SurroundLite Pendant Indirect, Beam 3 Recessed,

Beam 4 Recessed, Cove Perfekt Ceiling, Cove Perfekt Wall, Graze Perfekt Perimeter, Sculpt

Pendant, Sculpt Recessed, Sculpt Surface Direct, Sculpt Geometrix Recessed, Slim with VL

Pendant, Twin Beam 2 Pendant, Twin Beam 2 Lens Pendant, Twin Beam 2 Louver Pendant,

Twin Beam 2 SurroundLite Pendant Indirect, Twin Beam 3 Pendant, Twin Beam 3 SurroundLite

Pendant, Twin Beam 4 Pendant, Twin Beam 4 SurroundLite Pendant, SkyeView Recessed 2X2,

Aura Recessed, Dia Recessed, Day Recessed, Wave Recessed, Sculpt MikroLite 1.5 Pendant,

Sculpt MikroLite 1.5 Recessed, Sculpt MikroLite 1.5 Surface, Beam 2 MikroLite 1.5 Pendant,

and Beam 4 MikroLite 1.5 Pendant that include D2W color mixing technology and a dimmable

driver (collectively, "the D2W Products"), in the United States. On information and belief, each

of these products designated by DW3020 includes an Axis Dim-to-Warm dimming module.

70.    Claim 10 of the '902 Patent recites:

10. A method of varying a color temperature of a lighting device,
the method comprising:

receiving a dimmer signal on at least one of N input terminals,
wherein the dimmer input signal indicates multiple dimming levels
over time and N is a positive integer less than or equal to four (4);

receiving power from a voltage source on at least two of the N
input terminals;

supplying a first drive current to a first light source, wherein the
first light source has a stable first color temperature;

supplying a second drive current to a second light source, wherein the second light source has a stable second color temperature;

varying the first and second drive currents in response to changes in the dimming levels, wherein varying the first and second drive currents varies a color temperature of the lighting device.

71.     On information and belief, Defendant has directly and/or indirectly infringed and is directly and/or indirectly infringing claim 10 of the '902 patent by performing the claimed steps in the United States and/or inducing others to perform the claimed steps in the United States.

72.     On information and belief, when used as intended and marketed by Defendant, each Axitune D2W Product performs a method of varying a color temperature of a lighting device; for example, when the user operates the lighting device by dimming the lighting device, the color temperature of the lighting device goes from cool to warm.

73.     On information and belief, when used as intended and marketed by Defendant, each Axitune D2W Product performs the step of receiving a dimmer signal on at least one of N input terminals, wherein the dimmer input signal indicates multiple dimming levels over time and N is a positive integer less than or equal to four (4); for example, when the user operates the lighting device, the lighting device receives a dimmer signal on at least one of two or three input terminals and that indicates multiple dimming levels over time, e.g., a 0-10V DC or a phase-cut AC dimmer input signal.

74.     On information and belief, when used as intended and marketed by Defendant, each Axitune D2W Product performs the step of receiving power from a voltage source on at least two of the N input terminals; for example, when the user operates the lighting device, the lighting device receives power from a voltage source (e.g., 120 V or 277V power) on at least two of the input terminals.

75.     On information and belief, when used as intended and marketed by Defendant, each Axitune D2W Product performs the step of supplying a first drive current to a first light source, wherein the first light source has a stable first color temperature; for example, when the user operates the lighting device, each Axitune D2W Product includes a dimmable driver and Axis Dim-to-Warm module that supplies a first drive current to a first LED light source maintaining a warmer color temperature.

76.     On information and belief, when used as intended and marketed by Defendant, each Axitune D2W Product performs the step of supplying a second drive current to a second light source, wherein the second light source has a stable second color temperature; for example, when the user operates the lighting device, each Axitune D2W Product includes a dimmable driver and Axis Dim-to-Warm module that supplies a second drive current to a second LED light source maintaining a cooler color temperature.

77.     On information and belief, when used as intended and marketed by Defendant, each Axitune D2W Product performs the step of varying the first and second drive currents in response to changes in the dimming levels, wherein varying the first and second drive currents varies a color temperature of the lighting device; for example, when the user operates the lighting device, the driver in each Axitune D2W Product includes a light source driver controller (e.g., including at least the Axis Dim-to-Warm module) to cause the driver to vary the first and second drive currents in response to changes in the dimming level indicated by the dimmer signal input, which results in varying a color temperature of light generated by the Axitune D2W Product (e.g., transitioning the color temperature of the light from 3000K to 2000K while simultaneously dimming the light along a linear curve).

78.     On information and belief, Defendant is knowingly and intentionally inducing infringement of at least claim 10 of the '902 patent, in violation of 35 U.S.C. § 271(b), by actively encouraging others to use the Axitune D2W Products, which perform all of the claimed steps. For example, on information and belief, Defendant markets, promotes, and advertises the Axitune D2W Products and provides product brochures, specification sheets, and other informational materials that actively encourage others to directly infringe the '902 patent through its website (www.axislighting.com), its sales representatives, its distributors and/or dealers, and other channels. On information and belief, Defendant has had knowledge of the '902 patent, including knowledge that Axitune Dim-to-Warm products infringe the '902 patent, since at least as early as April 4, 2019.

79.     The full extent of Defendant's infringement is not presently known to Signify. On information and belief, Defendant has made and sold, or will make and sell, products under different names or part numbers that infringe the '902 patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims in this Count without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identification based on additional information obtained through discovery or otherwise.

80.     Signify has suffered and continues to suffer damages as a result of Defendant's infringement of the '902 patent in an amount to be determined at trial.

81.     Defendant's infringement of the '902 patent is causing irreparable harm for which Signify has no adequate remedy at law unless Defendant is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '902 patent.

82.     On information and belief, Defendant was aware of and had notice of the '902 patent at least as early as April 4, 2019, and its infringement of the '902 patent has been and continues to be willful and deliberate. On April 4, 2019, Signify explained to Defendant that its Axitune Dim-to-Warm products infringe at least claim 1 of the '902 patent. On June 10, 2019, Signify provided Defendant a draft complaint alleging infringement of at least claims 1 and 10 of the '902 patent and identifying representative products accused of infringement. Defendant has therefore acted, and continues to act, in an egregious and wanton manner by continuing to infringe the '902 patent despite this knowledge of the patent, claims, and accused products.

## COUNT FIVE

## INFRINGEMENT OF U.S. PATENT NO. 7,352,138

83.     Signify incorporates by reference paragraphs 1-82 as if fully set forth herein.

84.     On April 1, 2008, the Patent Office duly and legally issued the '138 patent, titled "Methods and Apparatus for Providing Power to Lighting Devices" to Ihor A. Lys et al. Plaintiff Signify North America Corporation is the assignee and owner of all right, title, and interest in the '138 patent, a copy of which is attached as Exhibit E.

85.     On information and belief, Defendant has infringed and is infringing claims of the '138 patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or importing LED Lighting Devices that include a phase-dimmable driver, such as a Lutron Hi-lume A-series 2Wires Forward Phase (1%) LED driver (e.g., designated by "LT" in the model number and "LTE" for the driver deselection), including without limitation the products identified in paragraph 10 that include a phase-dimmable driver (collectively, "the LTE Dimming Products"), in the United States. On information and belief, each of these products designated by LT in the model number and LTE for the driver selection includes a Lutron Hi-lume A-series 2Wires Forward Phase (1%) LED driver from Lutron

Electronics Company. An LTE LED driver—the LTEA4U1UKN-FA080—was reversed engineered, and the resulting schematic is attached as Exhibit H.

86.     Claim 1 of the '138 patent recites:

1. An illumination apparatus, comprising:

at least one LED; and

at least one controller coupled to the at least one LED and configured to receive a power-related signal from an alternating current (A.C.) power source that provides signals other than a standard A.C. line voltage, the at least one controller further configured to provide power to the at least one LED based on the power-related signal.

87.     On information and belief, Defendant has directly infringed and is directly infringing claim 1 of the '138 patent by making, using, offering to sell, selling, and/or importing the LTE Dimming Products in the United States.

88.     On information and belief, each LTE Dimming Product is an illumination apparatus; for example, each LTE Dimming Product is suitable to illuminate a space.

89.     On information and belief, each LTE Dimming Product includes at least one LED; for example, each LTE Dimming Product includes at least one LED light source (e.g., connected to the LED+ and LED- pins).

90.     On information and belief, each LTE Dimming Product includes at least one controller coupled to the at least one LED and configured to receive a power-related signal from an alternating current (A.C.) power source that provides signals other than a standard A.C. line voltage; for example, each LTE Dimming Product includes at least one controller (e.g., an LTE driver), which is coupled to the at least one LED light source (e.g., via the LED+ and LED- pins) and is suitable to receive phase-cut AC signals (e.g., via the L and N input pins) from a phase-cut AC dimmer (e.g., from a compatible AC dimmer with forward phase control).

91.     On information and belief, the at least one controller in each LTE Dimming Product is further configured to provide power to the at least one LED based on the power-related signal; for example, the at least one controller in each LTE Dimming Product includes circuitry (e.g., a flyback converter) that variably controls the intensity of and provides power to the at least one LED light source (e.g., provides power and controls a dimming range of 100% to 1% for the LEDs via the LED+ and LED- pins) based on the varying AC phase-cut signal (e.g., based on the varying phase-cut signal received at the L and N input pins from the compatible AC dimmer with forward phase control).

92.     The full extent of Defendant's infringement is not presently known to Signify. On information and belief, Defendant has made and sold, or will make and sell, products under different names or part numbers that infringe the '138 patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims in this Count without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identification based on additional information obtained through discovery or otherwise.

93.     Signify has suffered and continues to suffer damages as a result of Defendant's infringement of the '138 patent in an amount to be determined at trial.

94.     Defendant's infringement of the '138 patent is causing irreparable harm for which Signify has no adequate remedy at law unless Defendant is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '138 patent.

95.     On information and belief, Defendant was aware of and had notice of the '138 patent at least as early as May 16, 2012, and its infringement has been and continues to be willful

and deliberate. On May 16, 2012, Signify explained to Defendant that the '138 patent may be relevant to Defendant's LED products compatible with Lutron dimmers that provide an AC dimming signal. On May 16, 2012, Defendant acknowledged receipt of this notice and requested a copy of the patent for evaluation. On October 30, 2018, Signify explained to Defendant that its Axitune Dim-to-Warm products infringe claim 1, among others, of the '138 patent. On June 10, 2019, Signify provided Defendant a draft complaint alleging infringement of at least claim 1 of the '138 patent and identifying representative products accused of infringement. Defendant has therefore acted, and continues to act, in an egregious and wanton manner by continuing to infringe the '138 patent despite this knowledge of the patent, claims, and accused products.

## COUNT SIX

## INFRINGEMENT OF U.S. PATENT NO. 6,577,512

96.     Signify incorporates by reference paragraphs 1-95 as if fully set forth herein.

97.     On June 10, 2003, the Patent Office duly and legally issued the '512 patent, titled "Power Supply for LEDs" to Ajay Tripathi et al. Plaintiff Signify Holding B.V. is the assignee and owner of all right, title, and interest in the '512 patent, a copy of which is attached as Exhibit I.

98.     On information and belief, Defendant has infringed and is infringing claims of the '512 patent, including at least claims 28 and 38, in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or importing LED Lighting Devices that include a Lutron Hi-lume A-series L3D LED driver (e.g., designated by "LT" in the model number and "L3D" for the driver deselection) or another driver containing substantially similar circuitry, including without limitation the products identified in paragraph 10 that include a Lutron Hi-Lume A Series L3D LED driver or a driver containing substantially similar circuitry (collectively, "the L3D Products"), in the United States. On information and belief, each of these products

designated by LT in the model number and L3D for the driver selection includes a Lutron Hi-lume A-series L3D LED driver from Lutron Electronics Company. A Lutron Hi-Lume A-Series L3D LED driver—the L3DA4U1UMN-3ABLK—was reversed engineered, and the resulting schematic is attached as Exhibit J.

99.     Claim 28 (including the limitations of claim 19) of the '512 patent recites:

A circuit for supplying power for LEDs comprising:

a transformer, the transformer supplying current to the LEDs and being responsive to a transformer control signal;

a current sensor for sensing current to the LEDs, the current sensor generating a sensed current signal;

a current reference for generating a reference current signal;

a current controller for comparing the sensed current signal to the reference current signal, the current controller generating a feedback signal;

a PFC responsive to the feedback signal, the PFC generating a gate drive signal;

a transistor responsive to the gate drive signal, the transistor generating the transformer control signal; and

a protective circuit limiting the current to the LEDs [and further comprising]

an optocoupler for isolating the current controller from the PFC.

100.    On information and belief, Defendant has directly infringed and is directly infringing claim 28 of the '512 patent by making, using, offering to sell, selling, and/or importing the L3D Products in the United States.

101.    On information and belief, each L3D Product includes a circuit for supplying power for LEDs; for example, each L3D Product includes a Lutron Hi -Lume A-series L3D LED driver or substantially similar driver that supplies power to LED light sources (e.g., through terminal block J2).

102.    On information and belief, each L3D Product includes a transformer, the transformer supplying current to the LEDs and being responsive to a transformer control signal; for example, each L3D Product includes a transformer (e.g., transformer T2), which supplies current to the LEDs (e.g., via the T2-SEC-MAIN terminal of transformer T2 and through VO+ and terminal block J2) and is responsive to a transformer control signal (e.g., signal 74).

103.    On information and belief, each L3D Product includes a current sensor for sensing current to the LEDs, the current sensor generating a sensed current signal; for example, each L3D Product includes a current sensor (e.g., circuitry, including for example resistors R$3, R4, and R37, from LED- to the STM32F103C6 IC, including for example via PA2 pin 12) that senses current to the LEDs (e.g., signal ISNS) and generates a sensed current signal (e.g., based on signal 32 at PA2 pin 12).

104.    On information and belief, each L3D Product includes a current reference for generating a reference current signal; for example, each L3D Product includes a current reference in the STM32F103C6 IC that generates a reference current signal.

105.    On information and belief, each L3D Product includes a current controller for comparing the sensed current signal to the reference current signal, the current controller generating a feedback signal; for example, each L3D Product includes a current controller (e.g., circuitry and/or code in the STM32F103C6 IC) which compares the sensed current signal (e.g., based on signal 32 on PA2 pin 12) to the internal reference current signal and generates a feedback signal (e.g., signal 46 on PA8 pin 29).  According to its specification sheet, the Lutron Hi-Lume A-Series L3D LED driver is a high-performance LED driver that provides smooth continuous 1% dimming from 100% to 1%.

106.    On information and belief, each L3D Product includes a PFC responsive to the feedback signal, the PFC generating a gate drive signal; for example, each L3D Product includes a PFC (e.g., circuitry in the power factor controller TDA483G IC) which is responsive to the feedback signal (e.g., via the path from PA8 to the VSENSE pin 1 on the IC) and generates a gate drive signal (e.g., the output signal at GTDRV pin 7 of the TDA843G IC).

107.    On information and belief, each L3D Product includes a transistor responsive to the gate drive signal, the transistor generating the transformer control signal; for example, each L3D Product includes a transistor (e.g., transistor Q1) which is responsive to the gate drive signal (e.g., turning on and off in response to the output signal at GTDRV pin 7 of the TDA486G IC) and generates the transformer control signal (e.g., signal 74).

108.    On information and belief, each L3D Product includes a protective circuit limiting the current to the LEDs; for example, each L3D Product includes a protective circuit (e.g., resistor R$34 connected to ISNS, amplifier U9A, and associated circuitry) which limits current to the LEDs (e.g., by disconnecting the LEDs from power via transistor Q17 when current to the LEDs reaches a limit).

109.    On information and belief, each L3D Product includes an optocoupler for isolating the current controller from the PFC; for example, each L3D Product includes an optocoupler (e.g., optocoupler U8) that isolates the current controller (e.g., circuitry and/or code in the STM32F103C6 IC) on the secondary side of the circuit from the PFC (e.g., circuitry in the power factor controller TDA483G IC) on the primary side of the circuit.

110.    Claim 38 of the '512 patent recites:

38. A circuit for supplying power for LEDs comprising:

a transformer, the transformer supplying current to the LEDs and being responsive to a transformer control signal;

a current sensor for sensing current to the LEDs, the current sensor generating a sensed current signal;

a current reference for generating a reference current signal;

a current controller for comparing the sensed current signal to the reference current signal, the current controller generating a feedback signal;

a PFC responsive to the feedback signal, the PFC generating a gate drive signal;

a transistor responsive to the gate drive signal, the transistor generating the transformer control signal; and

a protective circuit limiting the voltage to the LEDs.

111.    On information and belief, Defendant has directly infringed and is directly infringing claim 38 of the '512 patent by making, using, offering to sell, selling, and/or importing the L3D Products in the United States.

112.    On information and belief, each L3D Product includes a circuit for supplying power for LEDs; for example, each L3D Product includes a Lutron Hi -Lume A-series L3D LED driver that supplies power to LED light sources (e.g., through terminal block J2).

113.    On information and belief, each L3D Product includes a transformer, the transformer supplying current to the LEDs and being responsive to a transformer control signal; for example, each L3D Product includes a transformer (e.g., transformer T2), which supplies current to the LEDs (e.g., via the T2-SEC-MAIN terminal of transformer T2 and through VO+ and terminal block J2) and is responsive to a transformer control signal (e.g., signal 74).

114.    On information and belief, each L3D Product includes a current sensor for sensing current to the LEDs, the current sensor generating a sensed current signal; for example, each L3D Product includes a current sensor (e.g., circuitry, including for example resistors R$3, R4, and R37, from LED- to the STM32F103C6 IC, including for example via PA2 pin 12) that

senses current to the LEDs (e.g., signal ISNS) and generates a sensed current signal (e.g., based on signal 32 at PA2 pin 12).

115.    On information and belief, each L3D Product includes a current reference for generating a reference current signal; for example, each L3D Product includes a current reference in the STM32F103C6 IC that generates a reference current signal.

116.    On information and belief, each L3D Product includes a current controller for comparing the sensed current signal to the reference current signal, the current controller generating a feedback signal; for example, each L3D Product includes a current controller (e.g., circuitry and/or code in the STM32F103C6 IC) which compares the sensed current signal (e.g., based on signal 32 on PA2 pin 12) to the internal reference current signal and generates a feedback signal (e.g., signal 46 on PA8 pin 29).  According to its specification sheet, the Lutron Hi-Lume A-Series L3D LED driver is a high-performance LED driver that provides smooth continuous 1% dimming from 100% to 1%.

117.    On information and belief, each L3D Product includes a PFC responsive to the feedback signal, the PFC generating a gate drive signal; for example, each L3D Product includes a PFC (e.g., circuitry in the power factor controller TDA483G IC) which is responsive to the feedback signal (e.g., via the path from PA8 to the VSENSE pin 1 on the IC) and generates a gate drive signal (e.g., the output signal at GTDRV pin 7 of the TDA843G IC).

118.    On information and belief, each L3D Product includes a transistor responsive to the gate drive signal, the transistor generating the transformer control signal; for example, each L3D Product includes a transistor (e.g., transistor Q1) which is responsive to the gate drive signal (e.g., turning on and off in response to the output signal at GTDRV pin 7 of the TDA486G IC) and generates the transformer control signal (e.g., signal 74).

119.    On information and belief, each L3D Product includes a protective circuit limiting the voltage to the LEDs; for example, each L3D Product includes a protective circuit (e.g., resistors R89 and R88 connected to LED output voltage VO+, amplifier U9B, and associated circuitry) which limit the voltage to the LEDs (e.g., by disconnecting the LEDs from power via transistor Q17).

120.    The full extent of Defendant's infringement is not presently known to Signify. On information and belief, Defendant has made and sold, or will make and sell, products under different names or part numbers that infringe the '512 patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims in this Count without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identification based on additional information obtained through discovery or otherwise.

121.    Signify has suffered and continues to suffer damages as a result of Defendant's infringement of the '512 patent in an amount to be determined at trial.

122.    Defendant's infringement of the '512 patent is causing irreparable harm for which Signify has no adequate remedy at law unless Defendant is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '512 patent.

123.    On information and belief, Defendant was aware of and had notice of the '512 patent at least as early as July 4, 2016, and its infringement has been and continues to be willful and deliberate. In a June 24, 2016 letter delivered to Axis on July 4, 2016, Signify explained to Defendant that the '512 patent was implicated by its LED-based products, including at least Defendant's CovePerfect, Sculpt, SkePool, SurroundLite, Beam, Dia, Day, and Air products in

certain driver configurations. On February 22, 2017, Signify again explained to Defendant that these products infringe claims of the '512 patent. Defendant has therefore acted, and continues to act, in an egregious and wanton manner by continuing to infringe claims of the '512 patent despite this knowledge of the patent, claims, and accused products.

## COUNT SEVEN

## INFRINGEMENT OF U.S. PATENT NO. 7,703,951

124.     Signify incorporates by reference paragraphs 1-123 as if fully set forth herein.

125.     On April 27, 2010, the United States Patent & Trademark Office ("Patent Office") duly and legally issued the '951 patent, titled "Modular LED-based Lighting Fixtures Having Socket Engagement Features" to Colin Piepgras et al. Plaintiff Signify North America Corporation is the assignee and owner of all right, title, and interest in the '951 patent, a copy of which is attached as Exhibit K.

126.     On information and belief, Defendant has infringed and is infringing claims of the '951 patent, including at least claims 35, 36, 46, and 47 in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or importing the Wet Beam 4 LED products and substantially similar products, including without limitation: Wet Beam 4, Wet Beam DI, Beam 2, Twin Beam 2, Beam 3, Beam DI, Beam 4, Beam 6 (collectively, "the Modular Products"), in the United States.

127.     Claim 35 of the '951 patent recites:

35. A modular lighting fixture, comprising:

a fixture housing having at least one light exit aperture;

a socket mounted to the fixture housing and accessible via the at least one light exit aperture;

a light-generating module installed in and removable from the socket via the at least one light exit aperture; and

a controller module to control the light-generating module, the controller module disposed within the fixture housing and accessible via the at least one light exit aperture to facilitate installation and removal of the controller module, respectively, via the at least one light exit aperture.

128.   On information and belief, Defendant has directly infringed and is directly infringing claim 35 of the '951 patent by making, using, offering to sell, selling, and/or importing the Modular Products in the United States.

129.   On information and belief, each Modular Product is a modular lighting fixture (e.g., an LED luminaire).

130.   On information and belief, each Modular Product includes a fixture housing having at least one light exit aperture; for example, each Modular Product includes a fixture housing (e.g., a square or rectangular metal housing) which houses an LED lighting source and has at least one light exit aperture (e.g., an opening that accommodates a lens and through which light from the LED lighting source is emitted).

131.   On information and belief, each Modular Product includes a socket mounted to the fixture housing and accessible via the at least one light exit aperture; for example, each Modular Product includes a socket (e.g., a U-shaped metal structure) which is mounted to the fixture housing (e.g., via a bracket on which the U-shaped metal structure is screwed) and accessible via the at least one light exit aperture (e.g., via the opening through which light from the LED lighting source is emitted).

132.   On information and belief, each Modular Product includes a light-generating module installed in and removable from the socket via the at least one light exit aperture; for example, each Modular Product includes a light-generating module (e.g., a rectangular structure on which the LEDs are mounted) which is installed in and removable from the socket via the at least one light exit aperture (e.g., the structure on which the LEDs are mounted is installed in the

U-shaped metal structure and can be removed from the socket via the opening through which the light from the LED lighting source is emitted).

133. On information and belief, each Modular Product includes a controller module to control the light-generating module, the controller module disposed within the fixture housing and accessible via the at least one light exit aperture to facilitate installation and removal of the controller module, respectively, via the at least one light exit aperture; for example, each Modular Product includes a controller module to control the light-generating module (e.g., an LED driver module) which is disposed within the fixture housing (e.g., affixed between the socket and the housing on the side of the housing opposing the light exit aperture) and is accessible via the at least one light exit aperture to facilitate installing and removal of the controller module (e.g., to install or replace the LED driver according to Defendant's driver replacement instructions for the Modular Products).

134. Claim 36 of the '951 patent recites:

> 36. The fixture of claim 35, wherein: the fixture housing includes at least one thermally conductive portion; the socket is mounted to the at least one thermally conductive portion of the fixture housing; and the socket is configured to facilitate a thermal conduction path between the light-generating module and the at least one thermally conductive portion of the fixture housing.

135. On information and belief, Defendant has directly infringed and is directly infringing claim 36 of the '951 patent by making, using, offering to sell, selling, and/or importing the Modular Products in the United States.

136. On information and belief, the fixture housing in each Modular Product includes at least one thermally conductive portion; the socket is mounted to the at least one thermally conductive portion of the fixture housing; and the socket is configured to facilitate a thermal conduction path between the light-generating module and the at least one thermally conductive

portion of the fixture housing; for example, the fixture housing includes at least one thermally conductive portion (e.g., a metal side of the fixture housing), the socket is mounted to the metal side of the fixture housing via a metal bracket, which is configured to facilitate a thermal conduction path between the light-generating module (e.g., the LED driver installed in the socket) and the metal side of the fixture housing.

137.    Claim 46 of the '951 patent recites:

46. The fixture of claim 35, wherein the light-generating module is an LED-based light-generating module.

138.    On information and belief, Defendant has directly infringed and is directly infringing claim 46 of the '951 patent by making, using, offering to sell, selling, and/or importing the Modular Products in the United States.

139.    On information and belief, the light-generating module in each Modular Product includes an LED-based light-generating module; for example, the lighting-generating module includes an array of LEDs.

140.    Claim 47 of the '951 patent recites:

47. The fixture of claim 46, wherein the LED-based light generating module is configured to generate essentially white light.

141.    On information and belief, Defendant has directly infringed and is directly infringing claim 47 of the '951 patent by making, using, offering to sell, selling, and/or importing the Modular Products in the United States.

142.    On information and belief, the LED-based light generating module in each Modular Product is configured to generate essentially white light; for example, the array of LEDs on the light-generating module generates essentially white light (e.g., including for example color temperatures at 2700K, 3000K, 3500K, or 4000K as designated by 27, 30, 35, and 40 in the model number, respectively).

143.    The full extent of Defendant's infringement is not presently known to Signify. On information and belief, Defendant has made and sold, or will make and sell, products under different names or part numbers that infringe the '951 patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims in this Count without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identification based on additional information obtained through discovery or otherwise.

144.    Signify has suffered and continues to suffer damages as a result of Defendant's infringement of the '951 patent in an amount to be determined at trial.

145.    Defendant's infringement of the '951 patent is causing irreparable harm for which Signify has no adequate remedy at law unless Defendant is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '951 patent.

146.    On information and belief, Defendant is aware of and had notice of the '951 patent at least as early as July 23, 2019, and its infringement has been and continues to be willful and deliberate. On July 23, 2019, Signify explained to counsel for Defendant that its LED luminaires, including at least the Wet Beam 4 (WBR) products, implicated claim 35 of the '951 patent. Defendant has therefore acted, and continues to act, in an egregious and wanton manner by continuing to infringe claims of the '951 patent despite this knowledge of the patent, claims, and accused products.

## **PRAYER FOR RELIEF**

WHEREFORE, Signify prays for the following judgments and relief:

(a) A judgment that Defendant has infringed and is infringing the Patents-in-Suit;

(b) A permanent injunction against Defendant and its affiliates, subsidiaries, assigns, employees, agents or anyone acting in privity or concert from infringing the Patents-in-Suit, including enjoining the making, offering to sell, selling, using, or importing into the United States products claimed in any of the claims of the Patents-in-Suit; using or performing methods claimed in any of the claims of the Patents-in-Suit; inducing others to use and perform methods that infringe any claim of the Patents-in-Suit; or contributing to others using and performing methods that infringe any claim of the Patents-in-Suit, until the expiration of the Patents-in-Suit;

(c) An award of damages adequate to compensate Signify for Defendant's patent infringement, and an accounting to adequately compensate Signify for the infringement, including, but not limited to, lost profits and/or a reasonable royalty;

(d) An award of pre-judgment and post-judgment interest at the maximum rate allowed by law;

(e) An order finding that this is an exceptional case and awarding Signify its costs, expenses, disbursements, and reasonable attorneys' fees related to Defendant's patent infringement under 35 U.S.C. § 285 and all other applicable statutes, rules and common law; and

(f) Such other further relief, in law or equity, as this Court deems just and proper.

## **JURY TRIAL**

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Signify hereby demands a jury trial on all issues triable before a jury.


Dated: September 6, 2019                          Respectfully submitted,

                                                  *s/ Naresh Kilaru*
                                                  Naresh Kilaru (NK3496)
                                                  C. Brandon Rash (*pro hac vice* forthcoming)
                                                  FINNEGAN, HENDERSON, FARABOW,
                                                   GARRETT & DUNNER, LLP

901 New York Avenue, NW
Washington, DC 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

***COUNSEL FOR PLAINTIFFS***
***Signify North America Corporation and***
***Signify Holding B.V.***

**CERTIFICATE OF SERVICE**

The undersigned hereby states that the above was served on all parties of record, via this Court's ECF filing system on September 6, 2019.

*s/ Naresh Kilaru*

Naresh Kilaru (NK3496)
Finnegan, Henderson, Farabow,
     Garrett & Dunner, LLP
901 New York Avenue, N.W.
Washington, DC 20001-4413
Telephone: (202) 408-4000
Facsimile: (202) 408-4400
