# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIGNIFY NORTH AMERICA CORPORATION and SIGNIFY HOLDING B.V., | ) ) ) |
| Plaintiffs, | ) )   C.A. No. 1:19-CV-5516 (DLC) (KHP) |
| v. | ) ) ) |
| AXIS LIGHTING INC., | )   **JURY TRIAL DEMANDED** ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSE OF PATENT MISUSE

AKIN GUMP STRAUSS HAUER & FELD LLP

C. Brandon Rash (*pro hac vice*)
brandon.rash@akingump.com
M. Andrew Holtman (*pro hac vice*)
andy.holtman@akingump.com
Ryan Stronczer (*pro hac vice*)
rstronczer@akingump.com
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006
(202) 887-4000

Michael P. Kahn (4068615)
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park, 44th Floor
New York, NY 10036
(212) 872-1082
mkahn@akingump.com

*Counsel for Plaintiffs Signify North America Corporation and Signify Holding B.V.*

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................1
II.  BACKGROUND ..............................................................................................................2
III. LEGAL STANDARDS....................................................................................................3
     A.   Legal Standard for a Rule 12(f) Motion to Strike....................................................3
     B.   Legal Standard for Pleading Patent Misuse .............................................................3
IV.  ARGUMENT....................................................................................................................5
V.   CONCLUSION..............................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, No. 98-cv-7766, 2006 U.S. Dist. LEXIS 83823 (S.D.N.Y. Nov. 16, 2006) ................................................................................... 6

*Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827 (1950) ............................... 8

*C.R. Bard, Inc. v. M3 Sys.*, 157 F.3d 1340 (Fed. Cir. 1998) ...................................................... 5, 6, 7

*Chamberlain Group, Inc. v. Techtronic Indus. Co.*, No. 16-cv-6097, 2017 U.S. Dist. LEXIS 41095 (N.D. Ill. Mar. 22, 2017) ................................................................................................ 9

*Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398 (Fed. Cir. 1996) ............................................ 8

*Freescale Semiconductor, Inc. v. ChipMOS Techs., Inc.*, No. 5:09-cv-3689-JF, 2011 U.S. Dist. LEXIS 100978 (N.D. Cal. Sept. 8, 2011) ................................................................................... 9

*GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92 (2d Cir. 2019) ................................. 3, 10

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550 (Fed. Cir. 1995) 5, 7

*Gust, Inc. v. AlphaCap Ventures, LLC*, Nos. 15-cv-6192, 16-cv-1784, 2016 U.S. Dist. LEXIS 98869 (S.D.N.Y. July 28, 2016) ............................................................................................... 6

*IMX, Inc. v. E-Loan, Inc.*, 748 F. Supp. 2d 135 (S.D. Fla. 2010) .................................................... 7

*In re Certain LED Lighting Devices*, Inv. No. 337-TA-1081, Order No. 27 (Feb. 20, 2018) ........ 1

*Lear, Inc. v. Adkins*, 395 U.S. 653 (1969) ...................................................................................... 8

*Nalco Co. v. Turner Designs, Inc.*, No. 13-cv-2727, 2014 U.S. Dist. LEXIS 21362 (N.D. Cal. Feb. 19, 2014) ........................................................................................................................... 7

*Pace Int'l, LLC v. Indus. Ventilation, Inc.*, No. 08-cv-1822, 2009 U.S. Dist. LEXIS 73847 (W.D. Wash. Aug. 6, 2009) ................................................................................................................. 7

*Princo Corp. v. ITC*, 616 F.3d 1318 (Fed. Cir. 2010) ......................................................... 3, 4, 8, 9

*Seaboard Int'l, Inc. v. Cameron Int'l Corp.*, No. 1:13-cv-281, 2013 U.S. Dist. LEXIS 10678 (E.D. Cal. July 30, 2013) .......................................................................................................... 9

*Signify N. Am. Corp. v. Reggiani Lighting USA, Inc.*, No. 1:18-cv-11098-ER, 2020 U.S. Dist. LEXIS 49792 (S.D.N.Y. Mar. 23, 2020) ................................................................................ 1, 6

*Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*, No. 04-cv-1966, 2004 U.S. Dist. LEXIS 16584 (S.D.N.Y. Aug. 19, 2004) ..................................................................................................... 9, 10

*Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860 (Fed. Cir. 1997) ...................................... 3, 4, 8

*Windsurfing Int'l, Inc. v. AMF, Inc*. 782 F.2d 995 (Fed. Cir. 1986) ............................................ 3, 9

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969) ........................................... 9

**Statutes**

35 U.S.C. § 271(d) ................................................................................................................ passim

## I.  INTRODUCTION

This Memorandum is submitted in support of Plaintiffs Signify North America Corporation and Signify Holding B.V.'s (collectively, "Signify") renewed motion to strike Defendant Axis Lighting, Inc.'s ("Axis") seventh affirmative defense of patent misuse. Signify originally filed this motion April 17, 2020. D.I. 62. This Court denied the motion without prejudice to renewal fourteen days after Axis serves its invalidity contentions. D.I. 64. Axis served its invalidity contentions on September 25, 2020.  Axis has not served any supplemental answer or contentions with respect to patent misuse.  Signify thus renews its motion.

For its patent misuse defense, Axis makes the incorrect and unfounded allegation that "Signify has demanded that Axis pay royalties on all of Axis' lighting products sold in the United States without regard to whether the products are covered by the patents in suit or any other patent owned or licensed by Signify." Besides being untrue, this allegation is not a proper basis for patent misuse because patent enforcement is statutorily excluded from patent misuse under 35 U.S.C. § 271(d). Axis also failed to plead that Signify's enforcement actions impermissibly broadened the scope of any patent-in-suit with anticompetitive effect. Allowing Axis' legally deficient patent misuse defense to remain in the case will subject Signify to burdensome and unnecessary discovery. Axis filed its patent misuse defense in March 2020 (D.I. 52), over six months ago and *nine months* after Signify served the Complaint, giving Axis ample time. There is no reason to allow a fishing expedition on allegations that are conclusory and precluded as a matter of law. Axis' seventh defense should be stricken.[1]

---

[1] The United States District Court for the Southern District of New York and the International Trade Commission dismissed similarly deficient patent misuse claims in *Signify N. Am. Corp. v. Reggiani Lighting USA, Inc.*, No. 1:18-cv-11098-ER, 2020 U.S. Dist. LEXIS 49792 (S.D.N.Y. Mar. 23, 2020) and *In re Certain LED Lighting Devices*, Inv. No. 337-TA-1081 (Feb. 20, 2018), attached as Exhibit A.

## II.     BACKGROUND

Signify (formerly Philips Lighting) is a global market leader for lighting products with recognized expertise in the development, manufacturing, and application of innovative LED lighting solutions. D.I. 20, ¶¶ 8-9. Signify's LED lighting products have been installed and used throughout the world, including atop the Empire State Building.[2] To protect its intellectual property resulting from its significant investments, Signify has obtained numerous patents directed to various LED lighting devices and techniques. *Id.* Signify filed the instant action on June 13, 2019 (D.I. 1), and filed an amended complaint on September 6, 2019, alleging that Axis has infringed U.S. Patent Nos. 7,014,336, 7,255,458, 7,256,554, 7,288,902, 7,352,138, 6,577,512, and 7,703,951 (collectively, the "Patents-in-Suit") (D.I. 20).

After proper service of the Complaint on June 25, 2019 (D.I. 29), Axis defaulted (D.I. 12), and Signify was ordered to file a motion for default by August 23, 2019 (D.I. 13). On August 16, 2019, Axis filed a motion to dismiss for improper service and failure to state a claim. D.I. 15. The Court denied Axis' motion to dismiss for improper service (D.I. 29), and Signify filed an Amended Complaint (D.I. 20). In response, Axis renewed its motion to dismiss for failure to state a claim (D.I. 32), which the Court denied (D.I. 45, 68). On March 27, 2020, nine months after Signify served the initial Complaint, Axis filed its Answer to the Amended Complaint, raising seven defenses, including patent misuse. D.I. 52, Affirmative Defenses, ¶¶ 7-13.  More than six months have passed, and Axis has not sought to amend its answer or serve any supplemental contentions with respect to patent misuse.

---

[2] *See* "A 'New' New York State of Mind: Empire State Building Redefines New York City Skyline With Philips LED Lighting," *available at* https://www.signify.com/en-us/our-company/news/press-release-archive/2012/20120509-empire-state-building.

## III. LEGAL STANDARDS

### A. Legal Standard for a Rule 12(f) Motion to Strike

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). To strike an affirmative defense, the Court must consider: (1) whether the affirmative defense is factually plausible; and (2) whether the affirmative defense is precluded as a matter of law. *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98-99 (2d Cir. 2019). The Second Circuit recently clarified in *GEOMC* that "the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense, but with recognition that . . . applying the plausibility standard to any pleading is a 'context-specific' task." *Id.* at 98. The Second Circuit also reaffirmed that "an affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *Id.* In deciding whether to strike a defense, a court may consider whether the plaintiff will be prejudiced by inclusion of such defense. *Id.* at 99.

### B. Legal Standard for Pleading Patent Misuse

Patent misuse is a narrow doctrine, which "'requires that the alleged infringer show that the patentee has impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect.'" *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868 (Fed. Cir. 1997) (quoting *Windsurfing Int'l, Inc. v. AMF, Inc.* 782 F.2d 995, 1001 (Fed. Cir. 1986)); *see also Princo Corp. v. ITC*, 616 F.3d 1318, 1329 (Fed. Cir. 2010) (en banc).

"[P]atent misuse has been mainly a judicially created defense." *Princo*, 616 F.3d at 1326-30 (summarizing Supreme Court precedent from which the doctrine evolved). Courts have recognized certain practices as *per se* patent misuse, including, "requiring the purchase of an unpatented product as a condition for obtaining a license to the patent" (i.e., a tying arrangement)

3

and "requiring the payment of licensing fees after the expiration of the licensed patent and thus having the effect of extending the life of the patent beyond the statutory period." *Princo*, 616 F.3d at 1327; *see also Va. Panel*, 133 F.3d at 869 (internal citations omitted). *Princo* summarizes the "basic rule of patent misuse" as follows: "the patentee may exploit his patent but may not use it to acquire a monopoly not embraced in the patent." *Id.*

Congress has also enumerated five categories of activities that *cannot* be deemed patent misuse, including *inter alia* where a patentee "licensed or authorized another to perform acts which if performed without his consent would constitute contributory infringement of the patent," and where a patentee "sought to enforce his patent rights against infringement or contributory infringement." 35 U.S.C. § 271(d).

When a practice alleged to constitute patent misuse is neither *per se* patent misuse nor specifically excluded from a misuse analysis by § 271(d), then the court must engage in a multipart analysis to determine whether the practice constitutes patent misuse:

> [First,] a court must determine if that practice is reasonably within the patent grant, *i.e.*, that it relates to subject matter within the scope of the patent claims. If so, the practice does not have the effect of broadening the scope of the patent claims and thus cannot constitute patent misuse. If, on the other hand, the practice has the effect of extending the patentee's statutory rights *and does so with an anticompetitive effect*, that practice must then be analyzed in accordance with the 'rule of reason.' Under the rule of reason, the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect.

*Va. Panel*, 133 F.3d at 869 (internal citations omitted) (emphasis added).

The Federal Circuit has noted that "[t]he bringing of a lawsuit to enforce legal rights does not of itself constitute violation of the antitrust laws or patent misuse; there must be bad faith and improper purpose in bringing the suit, in implementation of an illegal restraint of trade."

4

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1558 (Fed. Cir. 1995). Following *Glaverbel*, the Federal Circuit rejected a jury instruction stating as follows:

> A patent is unenforceable for misuse if the patent owner attempts to exclude products from the marketplace which do not infringe the claims of the patent and the patent owner has actual knowledge that those products do not infringe any claim of the patents. The patent is also unenforceable for misuse when a patent owner attempts to use the patent to exclude competitors from their marketplace knowing that the patent was invalid or unenforceable.

*C.R. Bard, Inc. v. M3 Sys.*, 157 F.3d 1340, 1373 (Fed. Cir. 1998). The Court found this instruction "too vague a formulation to be useful," and stated that the patent misuse doctrine "does not include a general notion of wrongful use." *Id.* Instead, it held that "'wrongful' enforcement of patents is activity protected under *Noerr* and *California Motor*,[3] and is not subject to collateral attack as a new ground of 'misuse.'" *Id.* It further stated that "[i]t is not patent misuse to bring suit to enforce patent rights not fraudulently obtained." *Id.*

## IV.   ARGUMENT

Axis' seventh affirmative defense of patent misuse should be stricken because it alleges a legally insufficient basis and lacks plausibility. Axis does not allege any *per se* patent misuse, such as a "tying" arrangement; rather, Axis accuses Signify of conduct that falls squarely within the statutory safe harbor under 35 U.S.C. § 271(d). Axis asserts (falsely) that Signify "demanded that Axis pay royalties on all of Axis' lighting products sold in the United States without regard to whether the products are covered by the patents in suit or any other patent owned or licensed by Signify." D.I. 52, ¶ 12. Even if this were true, allegations of "wrongful" enforcement of a

---

[3] This is a reference to "sham" litigation under antitrust law. *See C.R. Bard*, 157 F.3d at 1368 ("Conduct prohibited under antitrust law includes bringing suit to enforce a patent with knowledge that the patent is invalid or not infringed, and the litigation is conducted for anti-competitive purposes. In such events the antitrust immunity of *Noerr-Pennington* and *California Motor Transp. Co. v. Trucking Unltd.*, 404 U.S. 508 (1972) does not apply to those who seek redress through judicial process.").

5

patent—e.g., attempting to exclude products from the market that are known to be non-infringing—cannot form the basis of a patent misuse defense. *See C.R. Bard*, 157 F.3d at 1373 ("the catalog of practices labelled 'patent misuse' does not include a general notion of 'wrongful' use"). Indeed, § 271(d)(3) "specifically creates a safe harbor for actions, like Signify's, 'to enforce . . . patent rights against infringement or contributory infringement.'" *Signify N. Am.*, 2020 U.S. Dist. LEXIS 49792, at *27 n.8 (quoting § 271(d)(3)).

For example, in *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, No. 98-cv-7766, 2006 U.S. Dist. LEXIS 83823 (S.D.N.Y. Nov. 16, 2006), the court applied *C.R. Bard* to dismiss a claim for patent misuse that was based on allegations that the patentee's enforcement efforts constituted misuse because the patentee "is aware that either the '773 patent is invalid or [the accused infringer's] product does not infringe it." *Id.* at *8. The court noted that the purpose of the patent misuse defense "is to prevent a patentee from using its patent to gain a competitive advantage beyond that which the patent rightfully confers, not to bar actions enforcing a patent against allegedly infringing products." *Id.* at *9; *Gust, Inc. v. AlphaCap Ventures, LLC*, No. 15-cv-6192, 2016 U.S. Dist. LEXIS 98869, at *14 (S.D.N.Y. July 28, 2016) (dismissing patent misuse based on assertedly baseless infringement claims because the allegations "fail[ed] to state any benefit that [the patentee] has sought or gained beyond that which naturally accrues to its possession of patents"). Thus, Axis' patent misuse defense is not cognizable because it is based on similar allegations that Signify seeks to enforce its patents allegedly "without regard to whether the products are covered by the patents in suit." D.I. 52, ¶ 12. Such bald assertions do not state any benefit sought or gained by Signify beyond those naturally accruing to a patent owner.

6

Some district courts have read *Glaverbel* to allow a patent misuse defense to be premised on alleged baseless enforcement of a patent so long as the facts pled "support a reasonable inference that [the patentee] (1) [acted with] bad faith and improper purpose in bringing the suit, and (2) impermissibly broadened the scope of the patent grant with anticompetitive effect." *See, e.g., Nalco Co. v. Turner Designs, Inc.*, No. 13-cv-2727, 2014 U.S. Dist. LEXIS 21362, at *36 (N.D. Cal. Feb. 19, 2014); *see also id.* at *35 n. 4. But these cases ignore the Federal Circuit's directive in *C.R. Bard* that "wrongful" enforcement of a patent—e.g., enforcing a patent against products known not to infringe—does not constitute patent misuse. *See C.R. Bard*, 157 F.3d at 1373; *Pace Int'l, LLC v. Indus. Ventilation, Inc.*, No. 08-cv-1822, 2009 U.S. Dist. LEXIS 73847, at *4 (W.D. Wash. Aug. 6, 2009) (dismissing "bad faith" allegations that patentee was attempting to enforce the patents against goods known not to be infringing based on *C.R. Bard*); *IMX, Inc. v. E-Loan, Inc.*, 748 F. Supp. 2d 1354, 1358 (S.D. Fla. 2010) (finding patent misuse defense based on allegations that the patentee had "threatened litigation with regard to an invention that is not embodied in their patent" was barred by § 271(d)). Thus, the analysis required to strike Axis' patent misuse defense should begin and end with 35 U.S.C. § 271(d)(3).

Even if this Court were to follow *Nalco* and other cases allowing patent misuse to encompass "bad faith" enforcement of a patent—which it should not, based on § 271(d) and *C.R. Bard*—the allegations here are insufficient to support that Signify: (1) acted in bad faith and with an improper purpose in bringing this patent infringement action, and (2) that doing so broadened the scope of the patent grant with anticompetitive effect. Axis has not alleged any facts supporting a reasonable inference that Signify brought this suit in "bad faith," i.e., that this suit is objectively baseless in that no reasonable litigant could realistically expect success on the merits, or that doing so broadened the scope of the patent grant with anticompetitive effect.

7

Axis alleges that "Signify has impermissibly attempted to expand their patent monopoly by expanding the temporal and geographic scope of the patents and conduct [sic] has had, and is having, an adverse effect on competition." D.I. 52, Affirmative Defenses, ¶ 11. This allegation, however, merely recites the legal standard. *See Va. Panel*, 133 F.3d at 868. Axis has not alleged any facts supporting a reasonable inference that Signify impermissibly broadened the scope of the Patents-in-Suit with anticompetitive effect through enforcement of the Patents-in-Suit. Axis cannot allege such facts because Signify has done no such thing.

Axis next alleges (incorrectly) that "Signify has demanded that Axis pay royalties on all of Axis' lighting products sold in the United States without regard to whether the products are covered by the patents in suit or any other patent owned or licensed by Signify" with "no administrative or procompetitive justification" and with "the intended effect … to cause Axis to either withdraw its competitive products from the market or increase the price of its products." D.I. 52, Affirmative Defenses, ¶¶ 12-13. As explained, these (untrue) allegations directed to Signify's attempts to enforce its patents is undeniably excluded from patent misuse under § 271(d). These practices are "reasonably within the patent grant." *Va. Panel*, 133 F.3d at 869; *see also Princo*, 616 F.3d at 1329 ("defense of patent misuse is not available to a presumptive infringer simply because a patentee engages in some kind of wrongful commercial conduct, even conduct that may have anticompetitive effects").[4] Also, the "misuse must be of the patent in

---

[4] *See also Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 834 (1950) ("We cannot say that payment of royalties according to an agreed percentage of the licensee's sales is unreasonable. Sound business judgment could indicate that such payment represents the most convenient method of fixing the business value of the privileges granted by the licensing agreement."), *overruled in part on other grounds by Lear, Inc. v. Adkins*, 395 U.S. 653 (1969); *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1408 (Fed. Cir. 1996) ("We agree … that royalties may be based on unpatented components if that provides a convenient means for measuring the value of the license." (citing *Automatic Radio*)); *Freescale Semiconductor, Inc. v. ChipMOS Techs., Inc.*, No. 5:09-cv-3689-JF, 2011 U.S. Dist. LEXIS 100978, at *6-7 (N.D. Cal.

suit." *Id.* at 1329 (internal quotation marks omitted). Axis' allegations regarding "any other patent" cannot support the patent misuse defense here.

Axis has also not sufficiently pled that Signify's enforcement actions impermissibly broadened the scope of the patent grant with anticompetitive effect. "[P]atent misuse requires a showing that the patentee's conduct had anti-competitive effects . . . 'in an appropriately defined relevant market.'" *Princo*, 616 F.3d at 1334 (quoting *Windsurfing*, 782 F.2d at 1001-02); *Seaboard Int'l, Inc. v. Cameron Int'l Corp.*, No. 1:13-cv-281, 2013 U.S. Dist. LEXIS 106784, at *8 (E.D. Cal. July 30, 2013) (dismissing patent misuse allegations for failure to sufficiently allege anticompetitive effects). Axis alleges generically that Signify is "the global market leader for in [sic] the market for lighting products" (D.I. 52, Affirmative Defenses, ¶ 8), but it fails to allege the relevant market, Signify's monopoly power within that market, or anticompetitive effects of the alleged practices within the relevant market. *See Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*, No. 04-cv-1966, 2004 U.S. Dist. LEXIS 16584, at *5 (S.D.N.Y. Aug. 19, 2004) ("Conclusory references to an 'anti-competitive effect' and 'improper restraint on competition' contained in the defendants' pleadings are not sufficient to give [the patentee] notice of the misconduct alleged."); *see also Chamberlain Group, Inc. v. Techtronic Indus. Co.*, No. 16-cv-6097, 2017 U.S. Dist. LEXIS 41095, at *42, *45 (N.D. Ill. Mar. 22, 2017) (dismissing patent misuse claim that relied upon antitrust allegations because the defendant "failed to identify any facts from which the court can infer . . . sufficient market power to have been able to create a monopoly").

---

Sept. 8, 2011) ("If convenience of the parties rather than patent power dictates the total-sales royalty provision, there are no misuse of the patents and no forbidden conditions attached to the license." (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 135 (1969)).

9

Accordingly, this defense should be stricken because it is not factually plausible and is premised on a legally insufficient basis. *See GEOMC*, 918 F.3d at 98-99. There are no allegations of *per se* patent misuse, no allegations of fraud in obtaining any Patent-in-Suit, no allegations of impermissibly broadening the physical or temporal scope of any Patent-in-Suit, no allegations of market power, and no allegations of anticompetitive or market injury. *See* D.I. 52, Affirmative Defenses, ¶¶ 7-13. Rather, the basis for Axis' defense is Signify's enforcement of patent rights against infringement, which is statutorily barred from being considered patent misuse. *See* 35 U.S.C. § 271(d)(3). Moreover, like the defendants in *Takeda*, Axis "parrot[s] the elements of a claim for patent misuse, without alleging even general facts to support that claim." 2004 U.S. Dist. LEXIS 16584, at *5.

If an accused infringer's allegations of non-infringement were enough to state a defense of patent misuse, then every patent infringement action would be susceptible to such a defense. Allowing the defense to proceed would prejudice Signify by expanding the scope of discovery and needlessly increase the time and expense of the litigation. Axis had nine months after Signify filed the complaint to allege its defense, and Axis has had over six months since filing its defense to supplement with plausible and legally sufficient allegations. Axis has not and cannot do so. Accordingly, the defense should be stricken.

## V.     CONCLUSION

For the reasons above, Signify respectfully requests that the Court issue an Order striking Axis' seventh affirmative defense in its entirety.

|  |  |
|---|---|
| Dated: October 9, 2020 | Respectfully submitted, |
|  | */s/ C. Brandon Rash* |
|  | C. Brandon Rash (*pro hac vice*) |
|  | brandon.rash@akingump.com |
|  | M. Andrew Holtman (*pro hac vice*) |
|  | andy.holtman@akingump.com |
|  | Ryan Stronczer (*pro hac vice*) |
|  | rstronczer@akingump.com |
|  | Akin Gump Strauss Hauer & Feld LLP |
|  | Robert S. Strauss Tower |
|  | 2001 K Street, N.W. |
|  | Washington, DC 20006 |
|  | (202) 887-4000 |
|  |  |
|  | Michael P. Kahn (4068615) |
|  | Akin Gump Strauss Hauer & Feld LLP |
|  | One Bryant Park, 44th Floor |
|  | New York, NY 10036 |
|  | (212) 872-1082 |
|  | mkahn@akingump.com |
|  |  |
|  | *Counsel for Plaintiffs Signify North America Corporation and Signify Holding B.V.* |

## **CERTIFICATE OF SERVICE**

The undersigned hereby states that the above was served on all parties of record, via this Court's ECF filing system on October 9, 2020.

Dated: October 9, 2020

Respectfully submitted,
*/s/ C. Brandon Rash*
C. Brandon Rash (*pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006
(202) 887-4000
brandon.rash@akingump.com

*Counsel for Plaintiffs Signify North America Corporation and Signify Holding B.V.*