# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
T (949) 760-0404

Cheryl T. Burgess
Cheryl.Burgess@knobbe.com

October 9, 2020

**VIA ELECTRONIC COURT FILING**

Honorable Denise L. Cote
United States District Court for the Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Courtroom 18B
New York, NY 10007-1312

   Re: *Signify North America Corporation et al v. Axis Lighting Inc.,*
      Civil Action No. 1:19-cv-05516DLC (S.D.N.Y.)

Dear Judge Cote,

We write regarding the discovery disputes that remain in the above matter after the Court teleconference yesterday. Signify provided Axis with a proposal on the remaining disputed issues after the conference. Axis responded earlier today shortly prior to Signify sending its letter to the Court. Axis suspects its response crossed paths with Signify's filing, and therefore writes to provide its proposal, which it believes resolves many of the remaining issues.

**Accused Products**

During the teleconference, Signify admitted that the alleged notice date for the '512 patent is the earliest date for possible damages. The Court determined that one year prior to the alleged notice date for the '512 patent was a reasonable cut-off date for the accused product definitions. In applying this guidance to the remaining accused product definitions, Axis proposed that the cut-off date for each should similarly be one year prior to the earliest date for possible damages. For some product categories, the earliest date is the alleged notice date and Axis applied a date one year prior to the alleged notice. For others, the earliest date is six years prior to the Complaint filing based on the six year statute of limitations in 35 U.S.C. § 286. Axis therefore applied a date seven years prior to the filing of the Complaint for some accused product definitions.

During the teleconference, the Court permitted Signify's inclusion of substantially similar products in the accused product definitions. The Court also understood Axis' position that in many instances it does not have the ability to assess whether there are additional products that are substantially similar. Axis added language to the accused product definitions after the language related to substantial similarity to capture this understanding.

Axis' current proposal for accused products is as follows:

| Patent | Definition of Accused Products |
|---|---|
| 6,577,512 | "512 Accused Products" - Axis' LED lighting products made, used, offered for sale, or sold in, or imported into, the United States since May 17, 2015, when configured with a Lutron Hi-lume A-series L3D LED driver, a Lutron Hi-lume A-series 2Wires Forward Phase (1%) LED driver, or another driver containing current feedback circuitry and a protective circuit limiting the current or voltage to the LEDs (to the extent Axis is aware of any). |
| 7,014,336 | "336 Accused Products" - Axis' LED lighting products made, used, offered for sale, or sold in, or imported into, the United States since October 30, 2017, when configured with Axitune Dim-to-Warm or Tunable White color-mixing technology, or substantially similar products (to the extent Axis is aware of any). |
| 7,255,458 | "458 Accused Products" - Axis' LED lighting products made, used, offered for sale, or sold in, or imported into, the United States since June 13, 2012, when configured with a SurroundLite Asymmetrical Optic or a VL Optic. |
| 7,256,554 | "554 Accused Products" - LED lighting products made, used, offered for sale, or sold in, or imported into, the United States since February 5, 2017, when configured with a Lutron Hilume EcoSystem LDE driver, including the Hi-lume 1% EcoSystem LDE1 LED driver, the Hi-lume 5% EcoSystem LDE5 LED driver, or other feed-forward driver that does not directly monitor or directly regulate the voltage or current provided to the LEDs (to the extent Axis is aware of any). |
| 7,288,902 | "902 Accused Products" - Axis' LED lighting products made, used, offered for sale, or sold in, or imported into, the United States since June 13, 2012, when configured with Axitune Dim-to-Warm color-mixing technology that changes the color temperature (CCT) of the lighting device as the lighting device is dimmed, or other substantially similar technology (to the extent Axis is aware of any). |
| 7,352,138 | "138 Accused Products" - Axis' LED lighting products made, used, offered for sale, or sold in, or imported into, the United States since June 13, 2012, when configured with a Lutron Hi-lume A-series 2Wires Forward Phase (1%) LED driver, or other phase-dimmable LED driver (to the extent Axis is aware of any). |
| 7,703,951 | "951 Accused Products" - Axis' modular LED lighting products made, used, offered for sale, or sold in, or imported into, the United States since July 23, 2018, when configured with a modular lighting fixture with a socket, light-generating module, and controller accessible and removable via a light exit aperture. |

Note that Axis is investigating the scope of the '458 patent in view of the Court's guidance and may seek clarification of the '458 accused product definition from the Court at a later date.

**Discovery Of Component Supplier, Make, and Model**

Signify seeks discovery of the supplier, make, and model for certain components. Axis does not object to identifying relevant accused product components, or the make, model, and supplier for components where third party discovery is necessary (*e.g.*, Lutron drivers). Axis agreed to provide discovery on supplier, make, and model for the following identified components during a prior meet and confer:
- 6,577,512            LED driver

- 7,014,336          LED driver; LED color-mixing circuitry, i.e. circuitry implementing Axitune technology where allegedly infringing
- 7,255,458          Diffuser
- 7,256,554          LED driver
- 7,288,902          LED driver; LED color-mixing circuitry, i.e. circuitry implementing Axitune technology where allegedly infringing
- 7,352,138    LED driver

Axis objects to providing supplier, make, and model for components where the claims do not relate to the specific design or operation of the components.  For example, some claims recite an "LED."  All LEDs are constructed and operate essentially the same.  Signify's request for supplier, make, and model is therefore not relevant or proportionate to the needs of the case. Axis offered in a meet and confer yesterday to provide a proposal that instead stipulates to these components, and Signify agreed to consider the proposal so long as it addresses all of the relevant claim terms for each stipulated component.  Axis will therefore provide a proposed stipulation that covers the following components.

- 6,577,512    LED light engine
- 7,014,336    LED light engine
- 7,255,458    LED light engine; LED driver
- 7,256,554    LED light engine
- 7,288,902    LED light engine
- 7,352,138    LED light engine
- 7,703,951    LED light engine; LED driver; Housing

If Axis determines it is not able to stipulate to any of the above listed components, it will at that point agree to provide discovery on the supplier, make and model for those components.

**Timing Of Discovery**

During the teleconference, the Court requested that Axis provide a date to Signify for completion of its document production related to the accused products.  Axis is reviewing the first three accused product categories in view of the Court's guidance, and working to determine the scope of the production and amount of time needed to gather the documents. Axis was unable to provide a date to Signify today, but is attempting to finalize its analysis by early next week.  We have informed counsel for Signify of the status of Axis' progress.  Axis requests additional time for it to complete its analysis and provide a date to Signify.

Axis also notes that the parties are working to confirm agreement on the four remaining accused product definitions in view of the Court's guidance, as well as the outstanding component issue.  As soon as the parties confirm agreement on those issues or receive further Court guidance, Axis will also work to confirm the amount of time needed to gather the related documents.  Axis requests that the Court clarify that Axis does not need to provide Signify with a date for document production with respect to these outstanding issues until a reasonable amount of time after the parties are in agreement on the scope of the discovery.

# Knobbe Martens

Sincerely,

*[signature]*

Cheryl T. Burgess

cc:   Counsel of record (via ECF)