# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIGNIFY NORTH AMERICA CORPORATION and SIGNIFY HOLDING B.V., | ) ) ) |
| Plaintiffs, | ) ) C.A. No. 1:19-CV-5516 (DLC) (KHP) |
| v. | ) ) ) **JURY TRIAL DEMANDED** |
| AXIS LIGHTING INC., | ) ) ) |
| Defendant. | ) ) |

## REPLY IN SUPPORT OF PLAINTIFFS' RENEWED MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSE OF PATENT MISUSE

AKIN GUMP STRAUSS HAUER & FELD LLP

C. Brandon Rash (*pro hac vice*)
brandon.rash@akingump.com
M. Andrew Holtman (*pro hac vice*)
andy.holtman@akingump.com
Ryan Stronczer (*pro hac vice*)
rstronczer@akingump.com
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006
(202) 887-4000

Michael P. Kahn (4068615)
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park, 44th Floor
New York, NY 10036
(212) 872-1082
mkahn@akingump.com

*Counsel for Plaintiffs Signify North America Corporation and Signify Holding B.V.*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................................1 | |
| II. | ARGUMENT........................................................................................................................2 | |
| | A. | Axis' Patent Misuse Allegations Are Statutorily Barred Under § 271(d) ................2 |
| | B. | Axis' Patent Misuse Allegations Fail to Render Its Defense Plausible....................3 |
| | C. | Axis' New "Bad Faith" Enforcement Theory Does Not Render Its Patent Misuse Defense Plausible ........................................................................................7 |
| | D. | Axis' Belated Request to Amend Its Pleading Should Be Denied...........................9 |
| III. | CONCLUSION...................................................................................................................10 | |

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
   No. 98-cv-776, 2006 U.S. Dist. LEXIS 83823 (S.D.N.Y. Nov. 16, 2006) ............................... 3

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
   157 F.3d 1340 (Fed. Cir. 1998) ................................................................................. 4, 6, 7, 8

*GEOMC Co. v. Calmare Therapeutics Inc.*,
   918 F.3d 92 (2d Cir. 2019) .................................................................................................... 4, 7

*Gust, Inc. v. AlphaCap Ventures, LLC*,
   No. 15-cv-6192, 2016 U.S. Dist. LEXIS 98869 (S.D.N.Y. July 28, 2016) ...................... 3, 5, 6

*Nalco Co. v. Turner Design, Inc.*,
   No. 13-cv-2727, 2014 U.S. Dist. LEXIS 21362 (N.D. Cal. Feb. 19, 2014) ............................. 8

*Pace Int'l, LLC v. Indus. Ventilation, Inc.*,
   No. 08-cv-1822, 2009 U.S. Dist. LEXIS 73847 (W.D. Wash. Aug. 6, 2009) .......................... 8

*Princo Corp. v. ITC*,
   616 F.3d 1318 (Fed. Cir. 2010) (en banc) ..................................................................... 4, 6, 7

*Signify N. Am. Corp. v. Reggiani Lighting USA, Inc.*,
   No. 1:18-cv-11098-ER, 2020 U.S. Dist. LEXIS 49792 (S.D.N.Y. Mar 23,
   2020) .................................................................................................................................. 3, 8

*Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*,
   No. 04-cv-1966, 2004 U.S. Dist. LEXIS 16584 (S.D.N.Y. Aug. 19, 2004) ............................. 5

*Va. Panel Corp. v. MAC Panel Co.*,
   133 F.3d 860 (Fed. Cir. 1997) ................................................................................................. 5

**Statutes**

35 U.S.C. § 271(d) ............................................................................................................. 2, 3, 7

35 U.S.C. § 271(d)(3) ..................................................................................................... 1, 2, 3, 8

I.     **INTRODUCTION**

Axis' opposition confirms that its patent misuse defense should be stricken. Beneath distractions, Axis concedes its allegations are directed to Signify's enforcement of its patent rights, which is statutorily excluded from patent misuse under § 271(d)(3). To get around this, Axis urges the Court to eviscerate the statutory safe harbor because Axis "vigorously denies" infringement. Axis does not and cannot cite any support for such a misguided proposition.

Beyond reciting elements of the legal standard, Axis' allegations are directed to Signify having sought royalties on LED lighting products that Axis believes do not infringe. Even separate from § 271(d)(3), merely seeking royalties cannot constitute patent misuse. Axis again cites no case allowing patent misuse to proceed on such a threadbare allegation. Axis falls far short of what is required to plausibly allege that Signify has acted to impermissibly broaden the physical or temporal scope of any patent-in-suit with anticompetitive effect.

With insufficient allegations in its Answer, Axis' opposition lobs all sorts of unsupported allegations in an apparent attempt to generally disparage Signify and assert a new "bad faith" enforcement theory. Besides that these allegations are not in its Answer, they are just the sort of general notions of "wrongful use" that the "narrow" patent misuse doctrine does *not* include. Moreover, allegations of bad faith enforcement—which Axis also has not plausibly alleged—fall under antitrust law, which is not subject to a collateral attack under patent misuse.

The Court should deny Axis' request to amend. Axis has had more than *sixteen months* since Signify served the Complaint and more than *six months* since the Court set the deadline for Signify's renewed motion to strike. Axis has no excuse for its delay. Also, Axis' opposition identifies no plausible allegations to support a patent misuse defense, meaning that any amendment would be futile and likely result in another round of motions practice. Neither Signify nor the Court should be forced into that position by Axis' dilatory tactics.

1

## II.  ARGUMENT

### A.  Axis' Patent Misuse Allegations Are Statutorily Barred Under § 271(d)

Axis' patent misuse defense should be stricken because it is barred under 35 U.S.C. § 271(d), which prohibits such a defense based on allegations directed to, *inter alia*, a patent owner having "sought to enforce his patent rights against infringement or contributory infringement." 35 U.S.C. § 271(d)(3). Even Axis sums up its misuse allegations as Signify having "demanded royalties on all of Axis' products without regard to whether they infringe." D.I. 109, Axis' Mem. in Opp'n (hereinafter, "Opp'n") at 15. Signify's actions to enforce its patent rights, including alleged royalty demands, fall squarely within the safe harbor. D.I. 97, Signify's Mem. in Support (hereinafter, "Mem.") at 5-6.

Axis does not even dispute that the language of § 271(d)(3) encompasses its allegations. *See* Opp'n at 15. Axis instead suggest that the "introductory clause" of § 271(d) eviscerates the safe harbor for actions to enforce patent rights where a defendant "vigorously denies" infringement. *Id.* Axis cites no case law to support this sweeping—and wrong—proposition that would effectively render the safe harbor meaningless. Any defendant can, and typically will, deny infringement in a patent-infringement action. Under Axis' misguided logic, no patent misuse defense—even one with allegations falling directly within § 271(d)—could be stricken until a finding of infringement.

Contrary to Axis' proposition, courts have repeatedly held that patent misuse allegations directed to enforcement-related actions should be stricken because they fail as a matter of law, even where the defendant argues non-infringement. Signify cited and discussed several of these cases in its opening brief, including two prior cases involving Signify, which Axis' opposition avoids. *See, e.g.*, Mem. at 1 (citing *In re Certain LED Lighting Devices*, Inv. No. 337-TA-1081

2

(Feb. 20, 2018)), 6 (quoting *Signify N. Am. Corp. v. Reggiani Lighting USA, Inc.*, No. 1:18-cv-11098-ER, 2020 U.S. Dist. LEXIS 49792, at *27 n.8 (S.D.N.Y. Mar 23, 2020)).[1]

In *Signify N. Am. Corp. v. Reggiani Lighting USA*, the court granted a motion to strike a patent misuse defense where the crux of the allegations were similar to those here—and indeed, went further. *See Reggiani*, 2020 U.S. Dist. LEXIS 49792, at *7-9, *22-28. Like the allegations here, the *Reggiani* misuse defense alleged that Signify was "asserting unfounded grounds for infringement in bad faith in order to stifle competition." *Id.* at *27. The court still struck the defense, for the same reasons that Axis' defense should be stricken here, including the reason that § 271(d)(3) "specifically creates a safe harbor for actions, like Signify's, 'to enforce … patent rights against infringement or contributory infringement.'" *Id.* at *27 & n.8.

### B. Axis' Patent Misuse Allegations Fail to Render Its Defense Plausible

While Axis' patent misuse defense should be stricken based on § 271(d) alone, it should also be stricken for the additional reason that Axis' allegations do not render the defense plausible. Axis concedes that "*Twombly*'s plausibility standard applies to affirmative defenses" (Opp'n at 4), and that, to survive a motion to strike, its Answer must plausibly allege "(1) the patentee has impermissibly broadened the scope of its rights with (2) anticompetitive effect and (3) that the practice is an unreasonable restraint on competition under the rule of reason" (*id.* at 8). Axis, however, plausibly alleges none of these elements.

Axis attempts to lower the bar for itself based on the "context-specific" analysis that the Second Circuit applies to pleading affirmative defenses. Opp'n at 11. This analysis takes into

---

[1] *See also id.* at 6 (discussing *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, No. 98-cv-776, 2006 U.S. Dist. LEXIS 83823, at *8-9 (S.D.N.Y. Nov. 16, 2006) (dismissing patent misuse claim where allegations were directed to the patent owner enforcing its patent knowing that the alleged infringer's product "does not infringe"); *Gust, Inc. v. AlphaCap Ventures, LLC*, No. 15-cv-6192, 2016 U.S. Dist. LEXIS 98869, at *14 (S.D.N.Y. July 28, 2016)).

consideration the timing of the pleadings and the nature of the defense.  *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019).  Neither of those factors work in Axis' favor here.  *GEOMC* highlights the typical 21-day interval to respond to a complaint, but Axis had *nine months* to file its Answer and *seven months* since to amend.  *GEOMC* also considers whether the facts needed to plead the defense were readily available.  918 F.3d at 98.  Here, *Axis* knew well the circumstances of Signify's actions to enforce its patent rights against *Axis* and the market that *Axis* itself participates in.  Axis' opposition alleges that "some facts … are not readily known," but does not name a single fact that might include.  Opp'n at 11.

Irrespective of the standard applied, Axis' Answer fails to allege a plausible defense.  The Federal Circuit characterizes patent misuse as "the patentee's act of impermissibly broaden[ing] the physical or temporal scope of the patent grant with anticompetitive effect."  *Princo Corp. v. ITC*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (en banc).  Thus, "when the patentee has used restrictive conditions on licenses or sales to broaden the scope of the patent grant," the Federal Circuit has held that an accused infringer may invoke the patent misuse doctrine.  *Id.*  Axis concedes that it does not allege any *per se* patent misuse, such as a "tying" arrangement.  Instead, Axis alleges that Signify impermissibly broadened the physical scope of the patents-in-suit, because Signify demanded royalties on products that Axis believes do not infringe.  This allegation, however, does not support patent misuse.

Axis has not alleged plausible facts to support that Signify, "by imposing conditions that derive their force from the patent, [Signify] has impermissibly broadened the scope of the patent grant" or any paten-in-suit.  *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998).  For this element, Axis only alleges Signify is attempting to enforce its patent rights by sending infringement notices to seek a license on products that Axis believes do not infringe.

Opp'n at 8.[2]  Not only do these actions fall within the statutory safe harbor, they do not constitute patent misuse as a matter of law as explained above.  For example, the court in *Gust* dismissed misuse based on the allegation that the patent owner "asserted objectively baseless claims of patent infringement."  *Gust*, 2016 U.S. Dist. LEXIS 98869, at *14.  As the Federal Circuit explained, a practice is "reasonably within the patent grant" if "it relates to subject matter within the scope of the patent claims."  *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997) (quotation marks omitted).  Axis has not alleged that Signify's enforcement of any patent-in-suit is unrelated to the subject matter within the scope of the claims of the patent-in-suit, and Axis fails to cite a single case finding that general allegations of noninfringement—like those here—plausibly allege misuse.  *See id.* at 8-9.

Axis also fails to plausibly allege any anticompetitive effect.  Axis repeats the legal standard in its Answer (Opp'n at 9 (citing D.I. 52, ¶ 11)), but merely reciting the standard is not sufficient.  *See Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*, No. 04-cv-1966, 2004 U.S. Dist. LEXIS 16584, at *5 (S.D.N.Y. Aug. 19, 2004).  Axis otherwise alleges that Signify and Axis are competitors and suppliers of lighting products.  Opp'n at 9 (citing D.I. 52, ¶¶ 8-10).  Nothing about these facts allege any anticompetitive effect, much less one that has resulted from Signify imposing conditions that impermissibly broadened the scope of any patents-in-suit, as patent misuse requires.  None of the cases Axis cites suggests otherwise.

---

[2] Axis suggests misuse based on what Axis calls a "blanket license."  Opp'n at 8.  This refers to one of two options in Signify's licensing program, which Signify calls the "flat-rate" option and which many licensees have selected.  Signify's opening brief cited both the Supreme Court of the United States and the Federal Circuit long ago sanctioning the use of such "blanket licenses."  *See* Mem. at 8 n.4 (citing *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 834 (1950); *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1408 (Fed. Cir. 1996)).  Axis' opposition ignores these cases.

Axis' opposition baldly speculates about what Signify is "attempting" to do and what *might* happen in the future, such as "reducing consumers' choices" or "increasing the price." Opp'n at 9.  But these allegations are not in Axis' Answer, Axis offers no plausible facts to support these post-hoc rationalizations, and Axis does not explain how this speculation either (1) resulted in any anticompetitive effect; and (2) resulted from a condition that impermissibly broadens the scope of a patent-in-suit or any other benefit that Signify gains "beyond that which naturally accrues to its possession of patents."  *Gust*, 2016 U.S. District LEXIS 98869, at *14.

Axis' speculative allegations appear to be based on a misunderstanding of how patent misuse works.  It is a patent-specific defense to infringement that, if shown, renders the patent unenforceable until the misuse is purged.  *See C.R. Bard*, 157 F.3d at 1372 ("a holding of misuse renders the patent unenforceable until the misuse is purged"); *Princo*, 616 F.3d at 1332 ("the patent in suit must itself significantly contribute[] to the practice under attack" (internal quotation marks omitted)).  Patent misuse is not based on general speculation of what might happen, as Axis urges, but rather based on whether the patentee has taken specific actions to impermissibly broaden the scope of its rights in the patents-in-suit, analyzed on a patent-by-patent-basis, in a manner that has resulted in an anticompetitive effect.  Axis has not plausibly alleged such ongoing action and effect for any patent-in-suit, and cannot rely on general speculation of alleged wrongdoing to fill the gaps.

In addition, Axis fails to plausibly allege facts that support any reasonable inference that Signify's practices pose an unreasonable restraint on competition.  Axis again relies on post-hoc rationalization to argue this element because "Plaintiffs are the global market leader, and Axis is a smaller competitor."  Opp'n at 9.  It defies logic and contradicts the law to suggest that merely alleging that the patent owner is a larger competitor to the defendant is sufficient to plausibly

6

allege an unreasonable restraint on competition.  Axis' allegations are precisely the type of general allegations of wrongdoing that courts have repeatedly found insufficient to support the "narrow" doctrine of misuse.  *See Princo*, 616 F.3d at 1329 ("Recognizing the narrow scope of the doctrine, we have emphasized that of patent misuse is not available to a presumptive infringer simply because a patentee engages in some kind of wrongful commercial conduct, even conduct that may have anticompetitive effects.").

        **C.**        **Axis' New "Bad Faith" Enforcement Theory Does Not Render Its Patent Misuse Defense Plausible**

Axis argues that the Court should allow its patent misuse defense to proceed because there is an open question of law on whether a patent misuse defense may be premised on an alleged baseless enforcement of patent.  Opp'n at 12-16.  This is contrary to Second Circuit law stating that an affirmative defense should be stricken when it is precluded as a matter of law, as Axis' defense here is.  *See GEOMC*, 918 F.3d at 98 ("There is no dispute that an affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims.").  Moreover, the Court need not decide this question of law because Axis fails to plausibly allege patent misuse under a "bad faith" enforcement theory. Mem. at 7-10.

Axis errs as a matter of law in arguing that "bad faith" eviscerates the statutory safe harbor under § 271(d) for enforcement of patent rights.  In *C.R. Bard*, the Federal Circuit explained that patent misuse "does not include a general notion of 'wrongful' use" and that "in application, the doctrine has largely been confined to a handful of specific practices."  *C.R. Bard*, 157 F.3d at 1373.  *C.R. Bard* addressed "bad faith" patent enforcement, but only in the context of an antitrust claim—*not* patent misuse.  *Id.* at 1369.  As another district court explained, in *C.R. Bard*, "the jury had returned a verdict of patent misuse based on defendant's charge that plaintiff

7

'was attempting to enforce the patents against goods known not to be infringing,'" and "[t]he court found that '[i]t is not patent misuse to bring suit to enforce patent rights not fraudulently obtained' and overturned the jury's verdict." *Pace Int'l, LLC v. Indus. Ventilation, Inc.*, No. 08-cv-1822, 2009 U.S. Dist. LEXIS 73847, at \*4 (W.D. Wash. Aug. 6, 2009). Axis invites another jury reversal, here, by asking this Court to reject this finding in *C.R. Bard* as "dicta." Opp'n at 13. The Federal Circuit explained that "'wrongful' enforcement of patents … is not subject to collateral attack as a new ground of 'misuse.'" *C.R. Bard*, 157 F.3d at 1373. Axis should not be allowed a "collateral attack" here.[3]

Even if a "bad faith" enforcement theory was not barred and could support misuse, Axis' Answer does not plausibly allege such a theory. First, Axis still must plausibly allege that Signify that impermissibly broadened the scope of the patent grant with anticompetitive effect, which it has not done as explained. *See Nalco Co. v. Turner Design, Inc.*, No. 13-cv-2727, 2014 U.S. Dist. LEXIS 21362, at \*36 (N.D. Cal. Feb. 19, 2014). Second, Axis must plausibly allege that Signify acted with "bad faith and improper purpose in bringing this suit," which it again has not done. *Id.* The only allegation Axis points to in support of this theory is that "Plaintiffs demanded royalties on all Axis' products without regard to whether they infringe the Patents-in-Suit." Opp'n at 15 (citing D.I. 52, ¶ 12). This bald statement does not even allege, much less plausibly allege, both bad faith and improper purpose in bringing this suit. Axis cites no case for the proposition that the "narrow" misuse doctrine should be so vast as to encompass mere royalty demands just because the alleged infringer thinks they cover products that do not infringe.

---

[3] Axis string cites several district court cases that Axis purports recognize patent misuse based on improper enforcement, but Axis does not explain how these cases are consistent with *C.R. Bard* or analogous to Axis' allegations here. Opp'n at 12; *see Reggiani*, 2020 U.S. Dist. LEXIS 49792, at \*24 n.7, \*27-28 (declining to follow *Nalco* and *Optigen* because their approach "contravenes not only 35 U.S.C. § 271(d)(3), but also later Federal Circuit case law").

### D.     Axis' Belated Request to Amend Its Pleading Should Be Denied

Axis' request to amend its pleading should be denied because Axis has shown no good cause. First, Axis has no legitimate excuse for delaying until now to make such a request. Second, Axis' opposition shows that its attempt to amend its pleadings would be futile.

Axis has known Signify's position on its misuse defense since Signify originally filed its motion to strike in April 2020. D.I. 62. Axis knew the Court set a deadline for Signify to renew its motion (D.I. 64), but Axis still felt no urgency to amend its pleadings. Signify also served an interrogatory in July 2020 seeking Axis' patent misuse contentions. D.I. 92, Ex. 2 at 7. Axis has so far refused any substantive response on its patent misuse allegations, even to this day.

Axis' conduct here is consistent with its past behavior designed to (1) delay the outcome, and Axis' substantive participation in, this case; and (2) maximize the cost of litigation for Signify. Signify originally moved to strike Axis' bare-bone invalidity defense (D.I. 63), but to minimize unnecessary motions practice, Signify did not renew its motion with respect to invalidity because Axis served contentions. If Axis thinks it has additional allegations that make its misuse defense plausible, then Axis should have already either amended its pleadings or served contentions. It has done neither.[4]

In addition to Axis' laxity, the Court should deny Axis' request to amend its pleadings because Axis has still, even in its briefing, failed to plausibly allege a valid misuse defense. In a post-hoc attempt to contrive a patent misuse defense, Axis takes the opportunity in its opposition to generally disparage Signify instead of showing how its allegations avoid the statutory safe

---

[4] In contrast, when Axis earlier moved to dismiss Signify's willfulness claims (D.I. 16 at 8), Signify promptly amended its pleadings to avoid delay and in an attempt to avoid unnecessary motions practice (D.I. 20). Consistent with its strategy of delay and increasing costs of litigation, Axis still renewed its motion to dismiss willfulness, which the Court ultimately denied. D.I. 68.

9

harbor and otherwise plausibly allege patent misuse.  Axis raises new general allegations about Signify's enforcement actions involving patents not in this case and Signify's "pre-suit investigation" (Opp'n at 1-2), but these allegations do not support any misuse defense here directed to the *patents-in-suit*, and they still allege actions taken to enforce patent rights that fall under the statutory safe harbor.

The Court need not find prejudice to Signify to grant Signify's motion to strike or to deny Axis' request to amend its pleadings, but consideration of this factor only tips the balance further in Signify's favor.  Axis does not dispute that allowing its misuse defense to proceed would prejudice Signify; rather, Axis argues that the Court should ignore any prejudice because Axis timely filed its defense.  Opp'n at 16.  No matter, Axis cannot deny that the prejudice to Signify would be greatly exacerbated if Axis were allowed to amend its pleadings at this late stage, with the end of fact discovery less than five months away.

Axis has had *sixteen months* since Signify served the complaint to present a plausible defense, and it has not been able to do so.  Axis did not even provide the courtesy of attaching what its amended pleading would look like.  Axis' opposition confirms that it intends to make broad, unsupported (and untrue) allegations of "wrongdoing" to allow an unbounded fishing expedition into matters having nothing to do with what this case should be about—whether Axis has infringed valid claims of the patents-in-suit.  Signify should not be prejudiced by Axis' hide-the-ball, delay tactics, designed to increase costs to Signify and distract from what should be a straightforward patent-infringement case.

### III. CONCLUSION

For the reasons above, Signify respectfully requests that the Court issue an Order striking Axis' seventh affirmative defense in its entirety.

Dated: October 30, 2020

Respectfully submitted,
*/s/ C. Brandon Rash*
C. Brandon Rash (*pro hac vice*)
brandon.rash@akingump.com
M. Andrew Holtman (*pro hac vice*)
andy.holtman@akingump.com
Ryan Stronczer (*pro hac vice*)
rstronczer@akingump.com
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006
(202) 887-4000

Michael P. Kahn (4068615)
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park, 44th Floor
New York, NY 10036
(212) 872-1082
mkahn@akingump.com

*Counsel for Plaintiffs Signify North America Corporation and Signify Holding B.V.*

**CERTIFICATE OF SERVICE**

The undersigned hereby states that the above was served on all parties of record, via this Court's ECF filing system on October 30, 2020.

Dated: October 30, 2020

Respectfully submitted,
*/s/ C. Brandon Rash*
C. Brandon Rash (*pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006
(202) 887-4000
brandon.rash@akingump.com

*Counsel for Plaintiffs Signify North America Corporation and Signify Holding B.V.*